## THE WHITE COMPANY v. BERT BACHERIG.

Middle Section.   December 31, 1928.

S. L. Felts and Robert S. Webb, of Nashville, for appellant, Bacherig.

Roy D. Cooper, of Nashville, for appellee, The White Company.

CROWNOVER, J. The bill in this cause was filed to replevin an auto truck sold to defendant under a conditional sale contract, and to recover the balance due on the purchase price, default in payment having been made. The complainant prayed for the replevin of the truck, for a decree for the balance due, with interest and attorney's fee, and that the truck be sold in accordance with the Conditional Sales Statute in satisfaction of the decree.

The defendant filed an answer and a cross-bill in which it was denied that title to the truck was retained by complainant, and that there was a valid agreement by which it had any claim upon the truck, and it was charged that the provision in the contract relied upon by the complainant was oppressive, arbitrary, illegal and void. The defendant alleged that he informed complainant's agents that he desired a truck of 1½ ton capacity for the purpose of hauling slop from the Powder Plant to hogs on his farm, and that its agent fraudulently represented and guaranteed this truck to be a 1½ ton truck with standard G. M. C. attachments and equipment, capable of performing the work; that soon after delivery he found that it was not capable of doing the work as represented, and that a part of the gear machinery of the rear system, concealed within the housing, had been removed and replaced with defective outlaw parts, all of which was unknown to the defendant at the time he purchased the truck, and could not have been ascertained except by taking the machinery apart and by actual tests, and that he relied upon the representations of the agent and was thus induced to make the purchase. He therefore filed his answer as a cross-bill and prayed for a rescission of the contract and for a decree for $200 and interest alleged to have been paid on the purchase price.

The White Company answered the cross-bill and admitted that it had taken this truck in trade as a 1½ ton truck and had sold it as such, but it denied that it represented that the truck was equipped with the General Motors Corporation Standard attachments, but sold it "as is" which meant "without warranty." It denied any misrepresentation, and that the truck was not capable of doing the work required of it. It denied that cross-complainant was entitled to any relief, as he kept the truck and tried it out for two or three days before buying it and knew what he had purchased.

Many depositions were taken and read to the Chancellor, who held that the truck was sold "as is" without warranty, either expressed or implied, other than that it was sold as a truck of 1½ ton capacity "with standard attachments and equipment, delivery and acceptance of which in good order," was acknowledged, which representations were held to be true, in that, the truck was a 1½ ton truck and was equipped with standard attachments, and excluded all testimony as to parol warranties; and he therefore decreed that complainant recover the balance of $462 due on the purchase price, together with $79.30 interest, and $79.72 attorney's fee, making a total of $611.02, awarded the possession of the truck to complainant under the replevin writ, and decreed a sale of said truck as provided by the Conditional Sales Statute, and dismissed the cross-bill. The defendant appealed and has assigned three errors, which are to the effect that the Chancellor erred in dismissing the cross-bill and in awarding the recovery for complainant under the original bill, particularly:

(1) In holding that the written contract excluded the warranties, express or implied, set out in the cross bill and shown by the proof, and in excluding the parol evidence of such warranties.

(2) In not holding that there was an express warranty in the written contract that the truck was a General Motors Corporation truck of 1½ ton capacity, and was breached because the attachments in the rear system of the truck were not G. M. C. parts, and because its capacity was not 1½ tons as equipped with solid tires.

(3) In not holding that there was an implied warranty of quality and fitness for the purpose for which the truck was bought, for the reason that the buyer had made known to the seller his purpose in buying and had relied on the skill and judgment of the seller, which implied warranty had been breached in that the truck was not suitable for such purpose.

The facts necessary to be stated are that the complainant, The White Company, in July, 1925, sold to defendant Bacherig the General Motors Corporation truck of 1½ ton capacity with standard attachments and equipment, for the price of $710, of which he paid $200 cash, and executed a title retention contract agreeing to pay $48 on August 27, 1927, and the balance in installments of $42 each, monthly, and in default in payment of the installments for sixty days then all of the installments to become due and payable.

The defendant signed a "customer's order" to The White Company on July 22, 1925, for a used car "as is" which contained the following paragraph:

"This order is given subject to the approval of The White Company, and if accepted or filled in full or in part, payment hereunder is to be made at the price and terms set forth. It is understood that the

property hereby ordered is ordered as is and subject to no warranty or guarantee, express or implied, and that there is no understanding or agreement whatsoever between the undersigned and The White Company, or its agents with respect to this order, except such as are embraced herein.''

On July 27, 1925, the defendant executed the conditional sales contract showing the sale of ''one used G. M. C. truck,. model K-16, exchange car number 2571, with standard attachments and equipments delivery and acceptance of which in good order is hereby acknowledged.'' This paper recited the cash payment and the execution of the monthly installment notes, and retained title of the truck in the seller until all the notes are paid, and further provided that ''there are no agreements, understandings or representations between the parties hereto not embraced herein, it being agreed that this instrument contains the entire agreement between the parties.''

There was an order, of the same date, to complainant's shop foreman to deliver to the defendant '.'1 used 1½ ton G. M. C. Truck, exchange car no. 2571, as is,'' which was signed by Bacherig acknowledging receipt of the truck.

It appears that this truck had been purchased by the Pulaski Oil Company from the General Motors Corporation as a 1½ ton capacity truck with pneumatic tires, and equipped with standard G. M. C. gears and attachments; and that when The White Company acquired this truck in a trade the original gears were worn and it installed gears which were not made by the General Motors Corporation, but were made by the Detroit Beveled Gear Company, and that the pneumatic tires were replaced with the solid tires when sold to defendant Bacherig, which facts were not known to him.

The defendant Bacherig was permitted to use and to test said truck for two or three days before the deal was closed, and after the sale was consummated the defendant took the truck and used it for two months, when the housing of the rear system was broken. It was welded and replaced and the truck was then used for some time, when the rear gear system consisting of the ring gear and pinion gear gave way and was broken so that it could not be further used without repair and replacement. The complainant offered to replace the broken gears with G. M. C. parts, but the defendant refused to permit this to be done as he insisted that the truck would not carry as much as a two ton loan. Default in payment of the installments was made, and this bill was filed with the result above stated.

We may say at the outset that we agree with the opinion of the Chancellor both on his finding of facts and application of the law, and that none of the assignments of error is well taken.

The first assignment of error, to the effect that the court erred in holding that the written contract excluded the warranties as set out

in the cross-bill and in excluding the parol evidence of such oral warranties, is not well taken, because this truck was purchased as a used truck "as is" and subject to no warranty or guaranty, express or implied, with a written statement, that there were no other agreements, understanding, or representations between the parties, and that the contract contained the entire agreement, as 'hereinabove set·out.

Where the contract of sale of a machine provided that no other warranty than that in the written contract was made and binding, proof of an implied warranty was inadmissible. One cannot recover on an alleged verbal warranty under such circumstances, since verbal warranties are beyond the apparent scope of the agent's authority, and parol testimony is not admissible to vary a written contract. See Somerville v. Gullett Gin Co., 137 Tenn., 509, 194 S. W., 576; Acts of 1919, chapter 118, sec. 15, sub-sec. 6; Shannon's Code, Supplement 3670a26; 24 R. C. L., 189, sec. 461; 35 Cyc., 380, 392; Insurance Co. v. Schulman, 140 Tenn., 493, 205 S. W., 315; Central Pottery Co. v. Doyle Hardware Co., 3 Tenn. Apps. Reps., 225.

The latter case of Pottery Co. v. Hardware Co. is very much in point and is conclusive of the proposition. It results that this assignment of error must be overruled.

The second assignment of error to the effect that the court erred in holding that there was an express warranty in the written contract, that the truck was a General Motors Corporation truck of 1½ ton capacity and was breached because the attachments in the rear gear system of the truck were not G. M. C. parts and because its capacity was not 1½ tons as equipped with solid tires, is not well taken because there was no warranty that the attachments in the rear gear system were standard General Motors Corporation attachments. The only statement in the contract is that the truck "with standard attachments and equipment delivery and acceptance of which in good order" was acknowledged.

The proof shows that the ring gear and the pinion gear complained of were made by the Detroit Beveled Gear Company, which Company belonged to the standard equipment associations, and that these parts were as good as those made by the General Motors Corporation; hence we think there is nothing in this proposition.

The other proposition that under the written contract the truck was sold as a General Motors Corporation truck of 1½ ton capacity, was breached because the truck's capacity was not 1½ ton as equipped with solid tires, is not well taken for two reasons: first, because there is no proof in the record that this truck is not less than 1½ tons capacity, but on the other hand there is proof that it was a specially designed truck of 1½ ton capacity, when equipped with pneumatic tires. It appears that such a truck will not stand up as well when

equipped with solid tires as it will with pneumatic tires, on account of the constant vibration, but it does not appear from the evidence that the change in the tires would affect the truck's tonnage capacity; and second, this truck was tested and tried out by the defendant for two or three days and the tires were visible, and he knew that he was purchasing the truck equipped with solid tires and not with pneumatic tires. When one buys second hand or used property "as is" without warranty, he is put upon notice that he is buying the property at his own risk and he should acquaint himself with the whole situation, and we think he is not entitled to a rescission except for actual fraud, imposition or for other like reasons. This assignment of error must be overruled.

The third assignment of error to the effect that the court erred in not holding that there was an implied warranty of quality and fitness for the purpose for which the truck was purchased for the reason that the buyer had made known to the seller his purpose in buying the truck, and had relied on the skill and judgment of the seller, which implied warranty had been breached in that the truck was not suitable for such purpose, is not well made for two reasons; first, because the express warranties inconsistent with the implied warranty excludes the implied warranty. See Acts of 1919, chapter 118, sec. 15; Somerville v. Gullett Gin Co., supra; Pottery Co. v. Hardware Co., supra; and second, the buyer must act promptly if he would rescind the sale. See Goldstein v. Wells, 6 Tenn. Apps. Reps., 367.

"Where the goods have been delivered to the buyer, he cannot rescind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or offer to return the goods to the seller in substantially as good condition as they were in at the time the property was transferred to the buyer. But if deterioration or injury to the goods is due to the breach of the warranty such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescind the sale." Acts of 1919, chapter 118, sec. 69, 1 (d) and (3); Williston on Sales (2 Ed.), secs. 251, 603 and 608; 24 R. C. L., 428, secs. 723-724.

The defendant testified that the gears of this truck gave him trouble while he had the car on trial before he made the purchase, and defendant's main witness stated that he told the defendant that the two gear parts complained of were not made by the General Motors Corporation, and the strong inference to be drawn from this witness' testimony is that he gave such information while the defendant had the truck on trial for at that time the defendant stated "he had not yet exactly purchased the truck," or words of similar import. The defendant strenuously insists that this gear system gave him trouble all

the time, and he kept and used the truck for more than two months after he learned that the truck was not equipped with the General Motor Corporation gears and attachments, and that it was not, as he insists, 1½ ton capacity. He not only kept the truck in his possession for two and one-half months knowing these facts, but he had possession when it was replevined in November, 1925, and he forced the complainant to replevin the truck and denied in his answer that the complainant had any title to the truck or claim under the conditional sales contract because it was alleged that the contract was oppressive, arbitrary, illegal and void; hence the case of Goldstein v. Wells is very much in point, and this assignment of error must be overruled.

There is no satisfactory reason given why the ring gear and the pinion gear in this truck were broken. The proof shows that it could have been caused by overloading, or because of a number of reasons other than defective material or workmanship of the parts. The complainant offered to furnish the defendant genuine General Motor Corporation gears but he declined on the ground that the truck would not carry as much as two tons. The defendant admits that he knew nothing about trucks or their mechanism and that the extent of his knowledge was to sit at the wheel and steer it on its course, and we are satisfied from the proof that the gears were not broken on account of defective material or workmanship. It results that all the assignments of error must be overruled and the decree of the Chancellor is affirmed. A decree will be entered in this court in favor of the complainant and against the defendant and the sureties on his appeal bond for the amount of the decree rendered below, with interest from January 27, 1928 to the present, together with the costs of the cause including the cost of the appeal.

It is further decreed that the complainant is entitled to the possession of the aforesaid truck and has a lien against same to secure the payment of the above decree, and he may proceed to advertise and sell said truck as provided by the Conditional Sales Law. The cause is remanded to the chancery court of Davidson county for the execution of the decree by a sale of the property, and no execution, except for the cost of the appeal, will be awarded until after said sale has been made and reported to the court.

Faw, P. J., and DeWitt, J., concur.