439

J. J. HENSON, Appellee, v. JOE WRIGHT, et al.,
Appellant.—296 S. W. (2d) 367.

Western Section at Jackson. February 25, 1955.

Petition for Certiorari denied by Supreme Court June 10, 1955.

C. N. Frazier, Camden, for appellant.

Peeler & Hollis, Camden, for appellee.

CARNEY, J. The complainant below, J. J. Henson, filed his original bill against the appellant, Joe Wright, d/b/a Wright Buick Company of Camden, Tennessee, and the Commerce Union Bank, a Tennessee Banking Corporation with an office in Camden, Tennessee. Complainant sought the rescission of a contract for the purchase of a tractor and equipment from the defendant, Joe Wright, and sought cancellation of a title retention note in the total sum of $654 payable in monthly payments of $36.39 each, to the order of defendant, Joe Wright, and by him endorsed and transferred to the defendant, Bank, which held the note at the time the suit was filed.

The complainant, who was employed by the TVA at or near the New Johnsonville Steam Plant as a boiler maker and who lived at Eva, near Camden, Tennessee, inquired of the defendant, Wright, about the purchase of a second hand tractor and equipment to work a few acres of truck patch. The defendant, Wright, who was in the automobile business and who was not a regular tractor dealer, told him that he thought he knew where he could procure one for him.

On an agreed date the complainant, the defendant, Wright, and a mechanic named Stepp went out to the home of Mr. Johnson, who owned the tractor, and looked over the tractor, and the tractor was started and driven around in a field at Johnson's home, without a plow or other implement attached. Johnson was not at home at the time of the demonstration.

The complainant, Henson, agreed to buy the tractor, and arrangements were made by the defendant, Wright, for one Arnold, a witness for defendant, to deliver the tractor and equipment to complainant's home. Arnold hauled the implements in the truck and the tractor was driven by one Hurlie Williams. About a mile from complainant's home the tractor quit running and was towed or pulled to the defendant's garage and place of business in Camden.

The witness, Arnold, testified that he did not remember who hired him to deliver the tractor, but the defendant, Wright, testified that he arranged with Arnold to deliver the tractor for $10, and it was understood that the $10 would be charged on open account against the complainant, Henson.

On the following Saturday the defendant, Wright, notified the complainant that the tractor had been repaired, and asked complainant to come after the tractor, which he did.

Complainant testified that within a short time after the tractor was delivered to his home he started it up and tried to pull a plow, but the tractor did not have sufficient power to pull the plow. Also, complainant testified that there was great difficulty in starting the tractor. Com-

plainant notified defendant, Wright, of the defects in the tractor, and on one occasion Wright went in person and worked on the tractor, and on another occasion he sent a mechanic out to Henson's home to work on the tractor. Complainant, Henson, was still not satisfied and was complaining to the defendant that the tractor was not in good working order, and on March 27, 1953, the defendant, Wright, told the complainant's wife that he was not going to do anything further to the tractor.

Thereupon the complainant notified the defendant that he would not pay any of the installments due on the purchase money note, one of which was due March 27, 1953, and that he was rescinding the purchase because of a breach of warranty, and on April 15, 1953, the complainant hired two people to deliver the tractor and equipment by truck to the defendant, who refused to allow them to leave the same at his place of business in Camden, and they were forced to return the tractor and equipment to the complainant's home, where the same were at the time of the filing of the bill.

The complainant contended that at the time of the sale the defendant warranted the tractor to be in good condition and suitable for use in pulling the equipment, which consisted of a disc, cultivator, and turning plow. His testimony is as follows:

"* * * Q. You say you told Mr. Wright what you wanted to do with this tractor? A. Yes sir.

"Q. Did he say that he had a tractor that would do the work? A. Yes sir, he said he had one that would do the kind of work that I wanted. In fact, it was bigger than what I wanted.

· "Q. Was there any equipment that he wanted to sell you with the tractor? A. Yes, sir, it was a disc and a cultivator and a turning plow.

"Q. What kind of a tractor was it? A. John Deere.

"Q. Had Mr. Wright been in the automobile and tractor business in Camden for a number of years? A. Well, he was in the automobile business—I never seen a tractor over there until I bought this one.

"Q. Now, you say that you told him the purpose that you proposed to put this tractor to? A. Yes sir.

"Q. Did he make any representations as to the fitness of the tractor that you were buying? A. Yes sir, he said it was in good shape, it was what I wanted and he thought I would be well pleased with it.

"Q. Did you rely on the statement that he made to you about its condition and its fitness for the special purpose that you were buying it for? A. Yes sir, I figured that he was truthful about it.

"Q. I will ask you to state if you would have bought the tractor if he had not said it was in good shape or that it was the kind you wanted? A. No sir, I would not have bought it.

"Q. State whether or not you relied upon his judgment regarding the matter and relied upon the statements he made when you bought it? A. Yes sir, he said it was in good shape when I bought it, and I asked him if it didn't work if he would make it good and he said 'Yes,' he would fix it.

"Q. After he assured you that it would do the work you wanted it to do did you buy it? A. I bargained to buy it, I guess that is what you would say.

"Q. Did you execute a note for the payment of the tractor and the disc, cultivator and plow? A. You mean did I sign a note for it?

"Q. Yes. A. Yes sir.

"Q. Do you recall the amount of the note? A. Well, the tractor was six hundred dollars and the interest and all was six hundred and fifty-four dollars."

The defendant contended, First, that he did not sell the tractor to the complainant, but that he merely accommodated him by getting him financed at the Bank, and, Second, that he did not make any warranty of any kind concerning the fitness and usefulness of the tractor, and, in substance, that the complainant bought the tractor "as is."

The case was tried upon depositions, and the Chancellor found in favor of the complainant, both on the issue of the warranty and the defense of no privity of contract, and granted the complainant's prayer for a rescission of the contract of sale and granted the complainant a judgment against the defendant for the amount of the balance due and owing on said note. Of course, he adjudged the tractor and equipment to belong to the defendant, Joe Wright.

The defendant, Wright, has appealed from the decree of the Chancellor and insists in this Court that both the defense of no warranty and the defense of no privity of

contract are sustained by the evidence and require a reversal of the Chancellor's decree.

Sec. 7262 of the Code of Tennessee, which is a part of the Uniform Sales Act, provides as follows:

"7262. Remedies for breach of warranty.—(1) Where there is a breach of warranty by the seller, the buyer may, at his election:

"(a) Accept or keep the goods and set up against the seller the breach of warranty by way of recoupment in diminution or extinction of the price;

"(b) Accept or keep the goods and maintain an action against the seller for damages for the breach of warranty;

"(c) Refuse to accept the goods, if the property therein has not passed and maintain an action against the seller for damages for the breach of warranty;

"(d) Rescind the contract to sell or the sale and refuse to receive the goods, or if the goods have already been received, return them to the seller and recover the price or any part thereof which has been paid.

"(2) When the buyer has claimed and been granted a remedy in any one of these ways, no other remedy can thereafter be granted.

"(3) Where the goods have been delivered to the buyer, he cannot descind the sale if he knew of the breach of warranty when he accepted the goods, or if he fails to notify the seller within a reasonable time of the election to rescind, or if he fails to return or to offer to return the goods to the seller in substantially

as good condition as they were at the time the property was transferred to the buyer. But if deterioration or injury of the goods is due to the breach of warranty, such deterioration or injury shall not prevent the buyer from returning or offering to return the goods to the seller and rescinding the sale.

"(4) Where the buyer is entitled to rescind the sale and elects to do so, the buyer shall cease to be liable for the price upon returning or offering to return the goods. If the price or any part thereof has already been paid, the seller shall be liable to repay so much thereof as has been paid, concurrently with the return of the goods; or immediately after an offer to return the goods in exchange for repayment of the price.

"(5) Where the buyer is entitled to rescind the sale and elects to do so, if the seller refuses to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has been paid, and with the remedies for the enforcement of such lien allowed to an unpaid seller by sec. 7246.

"(6) The measure of damages for breach of warranty is the loss, directly and naturally resulting, in the ordinary course of events, from the breach of warranty.

"(7) In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damages of a greater amount, is the difference between the value of the goods at

the time of delivery to the buyer and the value they would have had if they had answered to the warranty. (1919, ch. 118, sec. 69.)''

Complainant's action is grounded under sub-paragraph (d) mentioned above.

We look first to the evidence concerning the defense that defendant did not sell the tractor to the complainant, but that he merely acted as an accommodation go-between in getting the tractor financed through the Bank.

█ In the first place, the note was made payable to defendant, Wright, and recited that it was a title retention purchase money note, and Johnson is nowhere mentioned as the real seller in this particular transaction; Second, defendant, Wright, testified that Johnson wanted $550 for the tractor and equipment, but the record does not show how much he actually paid Johnson for the tractor, nor does it show how much money he received from the Bank when the note was transferred by Wright to the Bank, nor is there any showing of how much profit the defendant, Wright, had provided for himself in the transaction; and, Third, there were never any negotiations between the complainant, Henson, and the former owner, Johnson, concerning the purchase and sale of the tractor and equipment, and, on the contrary, Johnson testified that he sold the tractor to the defendant, Wright. (Tr. p. 64-a, question 30.) We think these factors preponderate in favor of the Chancellor's finding that there was privity of contract between the parties and that the defendant, Wright, actually did sell the tractor to complainant, Henson. Therefore, the Assignments of Error on this issue must be overruled.

 The complainant, Henson, is amply corroborated by a number of witnesses that the tractor was defective, would not run, and would not do the work for which he purchased it. Therefore, the final question presented is whether or not the evidence sustains the Chancellor's finding and the complainant's contention that the defendant, Wright, made an express warranty as to the fitness of the tractor and made an agreement to put the same in working condition if it should be defective.

It seems that the purchase and sale of the tractor actually took place out at Johnson's home when the complainant, Henson, the defendant, Wright, and the defendant's mechanic, Stepp, went out to look at the tractor and to try it out. Complainant says that Wright did warrant the tractor to be in good condition and agreed to fix it if it should be defective. The defendant, Wright, and his mechanic, Stepp, testified that nothing was said about the mechanical condition of the tractor and no warranty was made. Stepp also corroborates the defendant, Wright, to the effect that Wright was not selling the tractor to Henson, but was simply helping him to buy it from Johnson.

We agree with the Chancellor that the actions of the defendant immediately after the sale and purchase of the tractor tip the scales in favor of the complainant's contention. When the tractor broke down and quit running while being driven to complainant's home, the defendant sent for and had the tractor towed to his garage and made repairs thereon, and then later, upon complaint by complainant either in person or through mechanic, made two trips to complainant's home for adjustments to the tractor before he, in vexation, announced to the

complainant's wife that he would make no further repairs on the tractor.

The defendant, Wright, contends that the case is controlled by the case of White Co. v. Bacherig, 9 Tenn. App. 501, in which the Court held that where the parties made an express agreement in writing that the second hand truck was being sold "as is," and further provided that the written contract contained the entire contract between the parties, that under such circumstances parol proof of a verbal warranty would be inadmissible to vary the written contract. In the case at Bar there was no written contract to the effect that the tractor was being sold "as is" and, therefore, the White case would not apply.

Therefore, we hold that the evidence does not preponderate against the judgment or decree of the Chancellor, and the judgment of the Chancellor must be affirmed and all Assignments of Error respectfully overruled. 1950 Code Supplement, sec. 10622.

Decree will be entered in accordance with this Opinion, and the appellant, Wright, and his sureties taxed with the costs of this appeal.

Avery, P. J. (W. S.), and Bejach, J., concur.