ROY E. WOLFORD ET AL., APPELLEES, v. BENJAMIN G. FREEMAN ET AL., APPELLANTS.

35 N. W. 2d 98

Filed December 22, 1948. No. 32500.

*Joseph H. McGroarty*, for appellants.

*Pilcher & Haney* and *Donald S. Krause*, for appellees.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

SIMMONS, C. J.

In this action plaintiffs seek to rescind an executed contract for the purchase of a house and lot because of fraud, and to recover the purchase price. The trial court decreed rescission and entered judgment for the purchase price paid, less the rental value while held by plaintiffs. Defendants appeal. We affirm the judgment of the trial court.

The plaintiffs are husband and wife. Reference herein

to the plaintiff will be to Roy E. Wolford, the husband. Plaintiff is a real-estate agent and had engaged in buying and selling property on his own account. The defendants are husband and wife. Reference herein to the defendant will be to Benjamin G. Freeman, the husband.

The cause is here for trial de novo. The record establishes these facts largely without serious dispute. The defendant and his son were builders on their own account. The defendant purchased the lot involved in the summer of 1944. At that time according to one witness there was a ravine or gully some 6 or 8 feet in depth through the back part of the lot. The defendant describes this as a hole 5 or 6 feet deep and 20 feet in width. The records of the city of Omaha show that there was a fill running from 16 to 20 feet deep in the street in front of the lot. The defendant's son examined this record and advised defendant of it. The son testified that he knew the depression could extend into the lot and might be either shallower or deeper on the lot.

The defendant then had a basement dug on the lot to a depth of 5½ feet. The defendant testified that this basement was dug in solid yellow clay. The contractor who made the excavation said that it was "awful" black earth. A base was dug for the foundation of the house around the outer edge and for a supporting center wall 8 inches deep and 20 inches wide. At intervals of about 8 feet in the trench around the outer edge 8-inch diameter holes were made, 6 feet in depth. These holes were filled with concrete as were the trenches. Reinforcing steel was placed therein. The approved plans referred to later herein show a structure 26 feet. by 32 feet in size. The invoice covers 330 linear feet of one-half-inch reinforcing bars. A foundation resting on 6-foot piling was the result. The defendant and his son testified that they stopped digging the holes for the piling at the 6-foot depth because they thought they had reached solid ground.

Defendant testified that he put the piling under the foundation for his own protection. As to the reason for the piling, defendant answered yes to these questions on cross-examination: "Well, then, the fact is that you were suspicious or felt that this house was being built on filled ground, isn't that correct?" and "Well, I will ask you once more, if the contractor is suspicious, and has reason to believe that the house is not on solid ground, then to protect himself, why, he goes ahead and puts down piling, is that what you wish to say?"

On September 25, 1944, the defendant applied to the city of Omaha for a building permit and at the same time submitted plans for the structure which he proposed to build on the premises. The permit was granted and the plans approved on the same day. It appears from the evidence that the basement had been excavated before the application and plans were submitted. Whether or not the foundation had been constructed at that time does not appear, save that the invoice for reinforcing steel is dated August 18, 1944, and includes a charge for delivery.

The building code of the city of Omaha provides in section 223: "Foundations shall not be laid on filled or made ground or on loam, or on any soil containing a mixture of organic matter, and must rest on hard, sound soil. Foundations shall in all cases extend from 2-½ to 4 feet below the finished surface of the ground upon which they are built, depending upon the conditions of the soil, unless footings rest on bed rock."

The plans as to the foundation submitted by the defendant to the city did not indicate that the structure was to be built on filled earth, made no reference to piling that had been or would be placed under the foundation, and were such as only were approved for structures to be built on a footing of sound soil. There is no showing of revised plans being submitted later to the city.

On this foundation the defendant built a basement wall of concrete blocks and on those a one-story house of tile and brick veneer. The house was completed in 1945, and thereafter rented to a tenant.

By contract dated March 27, 1946, and by deed dated May 3, 1946, defendants through an agent sold the property for $9,500 to a Mr. Michael, who went into possession in May 1946. Shortly after the purchase cracks appeared in various parts of the house and later in the foundation. Mr. Michael made test borings and satisfied himself that the house had been built on filled ground. It is not shown that Mr. Michael told defendant of the tests made. However, Mr. Michael in September 1946, tendered the premises back to defendant and demanded a return of his purchase money. By contract dated December 2, 1946, rescission was had. The contract recited in a whereas provision that Mr. Michael demanded rescission because the house was settling and cracking, and was structurally unsound due to the fact that it was erected on filled ground without piling or other sufficient foundation, contrary to the building code. A provision typed into the original agreement and lined out recited that the defect was known to defendants and their agents when the contract was executed. Defendants signed the contract. On the witness stand defendant testified that the Michael transaction was rescinded so far as he knew because Mr. Michael wanted his money back. Mr. Michael vacated the premises in March 1947.

Defendant then had a construction company do some repair work on the cracks in the structure. Black mortar was used. Defendant had another workman remove the black mortar and replace it with a brownish mortar as nearly as possible the color of the original mortar in the structure. He also had the basement walls waterproofed 4 feet down on the outside, and cement structures were put around the foundation to direct water from the house. Defendant testified that he did this

because he presumed the water was getting under the foundation and causing the settling. He also had the cracks on the inside of the house filled with plaster and the entire house redecorated.

In April 1947, defendant listed the house for sale through another agent at an asking price of $11,500. This agent advertised the house in the newspapers on April 20, 1947. The evidence of the defendant is that he told the agent he wanted a prospective purchaser to have notice of the fact that the house had settled and of the cracks. There is no evidence that he told his new agent of the rescission of the Michael contract or the reasons therefor, or of the knowledge which he had of the foundation and the condition of the soil under the house.

Plaintiff saw the advertisement, his wife answered it, and on the afternoon of April 21, 1947, he, his wife, and two others were shown the premises by one of the two agents who handled the sale. The repaired cracks in the walls and foundation were visible. Plaintiff asked the cause and the agent said he did not know. According to the plaintiff, corroborated by another witness, the agent told plaintiff he had been instructed to inform a prospective purchaser that the damage had been corrected and that they need have no fear of further cracking. The agent made an equivocal denial of this statement. However, on direct examination, this evidence was given by the agent: "Did Mr. Wolford ask you the question whether you thought, or whether it would settle in the future? A-Oh, yes." "What was your answer to that? A-I did not."

The next day the plaintiff offered $10,000 for the property and that offer was submitted to the owner and accepted. There is a contention that the reduced price was made because of the condition of the house and the danger of further cracking, and that without the defect the house was worth $12,500. However, the expert evidence of the defendant is that there had been

no material increase in the value of real estate during the preceding year. It is noted that the property was sold the year before for $9,500. Plaintiff testified that the purchase price was not reduced in consideration of possible future damage.

The defendant's agent, when the contract was drawn and without prior mention to the plaintiff, inserted in the contract of purchase this clause: "Purchaser acknowledges that he has been advised as to settling of structure and is buying same as is." Plaintiff testified that he was informed the clause was inserted in the agreement because defendant did not want the agent to sell the house without the purchaser knowing that there were cracks that had been painted over. The agent testified that it was inserted because he wanted to be sure that plaintiff had observed the evidence of the cracking.

The property was sold subject to a mortgage. The net of the purchase price was paid, and the deed delivered April 24, 1947. One of the agents testified that when the contract was being discussed plaintiff said he knew how to take care of the settling. The agent who delivered the deed testified that when the deed was delivered plaintiff told him he had a bid of $400 to repair the footings of the house. Plaintiff denied that he had consulted with a contractor during that period of two days. There is nothing in the evidence that at that time there was any indication of need for work on the foundation.

Plaintiff moved into the premises in May 1947. Shortly thereafter minor cracks appeared in the plaster, then in the outer walls and foundation. These became progressively worse so that by September 1947, there were large and long cracks in the walls, the width of the thickness of a brick, and the house was beyond the stage of economic repair.

Plaintiff had test holes dug at three corners of the house. Evidence of filled earth was found in all the

holes, and evidence of solid ground was not found above a depth of 20 to 22 feet. The center foundation and wall did not settle.

Plaintiff on June 30, 1947, demanded a rescission of the contract, and this action was brought in October 1947.

We determine the disputed questions of fact, as did the trial court, in favor of the plaintiff. It is patent from this record that the house was built on a foundation resting on filled earth, in violation of good building practices and the building code of the city of Omaha; and that the defendant knew all the facts that lead to the ultimate conclusion that the foundation rested on filled earth. His conduct in putting down piling indicates that he had reached that conclusion sufficiently at least to undertake to guard against the result. He did not reveal the condition of the soil to the city when he secured his building permit. It also is patent that defendant knew when he sold the premises to the plaintiff that the foundation was faulty and insufficient; that he undertook to conceal and did conceal those facts from the plaintiff; that he did not reveal them to his agent; and that the condition of the soil and the construction of the foundation were latent defects and material ones. It likewise is evident that it was represented to the plaintiff that the cause of the settling had been corrected and that he need have no concern about it.

The applicable rules of law are these.

" 'A principal who authorizes an agent to conduct a transaction for him, intending that the agent shall make representations to another in the course of it which the principal knows to be untrue, is liable for such misrepresentations as if he himself had made them intentionally; if, although he does not intend that the agent shall make misrepresentations, he should know that the agent will do so, the principal is liable as if he himself had made them negligently.' " Ashby v. Peters, 128 Neb. 338, 258 N. W. 639, 99 A. L. R. 843.

" 'If, with the intent to deceive, either party to a contract of sale conceals or suppresses a material fact, which he is in good faith bound to disclose, this is evidence of and equivalent to a false representation, because the concealment or suppression is in effect a representation that what is disclosed is the whole truth. The gist of the action is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff.' " Linton v. Sheldon, 98 Neb. 834, 154 N. W. 724.

"As between vendor and purchaser, where material facts and information are equally accessible to both, and nothing is said or done which tends to impose on the purchaser or to mislead him, the failure of the vendor to disclose such facts does not amount to actionable fraud; but where such facts are known by the vendor and he knows them to be not within reach of the reasonably diligent attention, observation and judgment of the purchaser, and they are such as would readily mislead the purchaser as to the true conditions of the property, the vendor is bound to disclose such facts." O'Shea v. Morris, 112 Neb. 102, 198 N. W. 866. This rule is followed in Clauser v. Taylor, 44 Cal. App. 2d 453, 112 P. 2d 661, and Rothstein v. Janss Investment Corp., 45 Cal. App. 2d 64, 113 P. 2d 465, both of which deal with the sale of land with undisclosed knowledge that depressions had been filled.

"A contract procured by the intentional supprossion (sic) or concealment of material facts touching the very substance of it by one party, which facts, if they had been disclosed, would have prevented the other party from entering into it, may be rescinded by the party deceived, and the guilty party is not entitled to its enforcement." Linton v. Sheldon, *supra*.

"It is an ancient and well-established principle, that

whenever *suppressio veri* or *suggestio falsi* occur, and more especially both together, they afford a sufficient ground to set aside any release or conveyance." Smith v. Richards, 13 Pet. 26, 10 L. Ed. 42. See, also, Krause v. Stevens, 103 Neb. 463, 172 N. W. 245.

Applying these rules to the facts shown, it is clear that the plaintiff is entitled to prevail in this action unless the defendant is relieved by the inclusion in the contract of the provision that "Purchaser acknowledges that he has been advised as to settling of structure and is buying same as is."

We have held: "A provision in a contract for the purchase of real estate, to the effect that vendee agrees that he has made personal inspection of the property covered by the contract and is buying it solely on his own investigation and not on any representations made by any one else as to any material matter affecting such property or his purchase thereof, will not relieve the vendor, or his agent, from responsibility for fraudulent representations, made by vendor's agent, concerning the subject-matter of the contract, for the agent has ostensible authority to make representations as to the subject-matter of the sale, and his fraud, committed within the limits of such authority, will fix responsibility both upon the principal and the agent." Menking v. Larson, 112 Neb. 479, 199 N. W. 823.

The language refers only to the obvious and admitted fact known to plaintiff that the building had settled. Plaintiff admittedly purchased with that knowledge. The provision discloses knowledge of the result that had then occurred from the undisclosed and concealed cause—to wit, the faulty foundation on filled earth. It does not disclose or suggest the cause.

The "as is" phrase is obviously limited to the knowledge of the settling of the structure and means that plaintiff purchased with knowledge of its then condition in that regard. Williams v. McClain, 180 Miss. 6, 176 So. 717; Johnson v. Waisman Bros., 93 N. H. 133, 36 A.

2d 634; 6 C. J. S., As, p. 781. "A provision that the buyer takes the article in the condition in which it is, or in other words, 'as is,' does not prevent fraudulent representations relied on by the buyer from constituting fraud which invalidates the contract * * *." 46 Am. Jur., Sales, § 319, p. 501. See, also, Annotation 58 A. L. R. 1181, 151 A. L. R. 460; Regula v. Gerber, 34 Ohio O. 206, 70 N. E. 2d 662; The White Co. v. Bacherig, 9 Tenn. App. 501; Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S. W. 2d 47; Packard-Dallas v. Carle (Tex. Civ. App.), 163 S. W. 2d 735; Smith v. Richards, *supra*.

It follows that the contract provision does not relieve the defendant from the fraud which the evidence established.

The judgment of the district court is affirmed.

AFFIRMED.