WOLFE GITSCHEL AND DIANN L. GITSCHEL, APPELLANTS, v. JANICE E. SAUER, APPELLEE.

323 N.W.2d 93

Filed August 13, 1982. No. 44333.

Dennis L. Arfmann and Robert M. Brenner Law Office, for appellants.

Holtorf, Kovarik, Nuttleman & Ellison, P.C., for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

CLINTON, J.

This is an action for damages alleged to have been caused by the fraudulent representations made by the defendant seller inducing plaintiffs purchasers to buy a residential property located in Scotts Bluff

County, Nebraska. The seller filed a motion for summary judgment. Received in evidence in support of and in opposition to the motion were the purchase agreement; the deposition of each of the purchasers; the deposition of the defendant, Jan Sauer; the deposition of George Ruff, the real estate agent who represented the seller; and the answers by defendant to interrogatories by the plaintiffs. The trial court granted the summary judgment. The purchasers appealed. We affirm in part, and in part reverse and remand for trial on the merits.

Before a summary judgment may be granted, the moving party must establish that there exists no genuine issue as to any material fact in the case, and that under the facts he is entitled to a judgment as a matter of law. *Green v. Village of Terrytown,* 189 Neb. 615, 204 N.W.2d 152 (1973). The burden is upon the party moving for the summary judgment to show that no issue of fact exists, and unless he can conclusively do so, the motion must be overruled. Upon a motion for summary judgment the court examines the evidence, not to decide any issue of fact, but to discover if any real issue of fact exists. In considering a motion for summary judgment the court views the evidence in the light most favorable to the party against whom it is directed, giving to that party the benefit of all favorable inferences that may reasonably be drawn therefrom. A motion for a summary judgment is not a substitute for a demurrer or a motion for a directed verdict. *Green v. Village of Terrytown, supra.*

A party who has been induced to enter a contract by fraud has, upon its discovery, an election of remedies, and he may either affirm the contract and sue for damages or disaffirm it and be reinstated to the position he was in before it was consummated. *Russo v. Williams,* 160 Neb. 564, 71 N.W.2d 131 (1955).

The petition of the plaintiffs set forth four alleged

causes of action. The operative substance of these various causes is essentially the same, viz, in the negotiations leading up to the execution of the contract, the seller represented to the buyers, knowingly or recklessly with disregard of truth or falsity, that there existed on the premises a new and adequate well and a new and adequate septic tank and drainage system; that the buyers relied upon said representations in entering into the contract and were justified in so doing because the systems were not open to inspection; that the representations were not true; that the septic system and well did not, in fact, function properly; and that the plaintiffs were damaged by the false representations and were required to spend money to replace the systems to make the residence habitable.

The contract of purchase contained the following provision: "This offer is based upon my (our) personal inspection or investigations of the premises herein described and not upon any representation or warranties of conditions made by the seller or his agent." The seller contends that this provision entitles her to judgment as a matter of law. With respect to such a provision we have said, quoting from the earlier case of *Menking v. Larson,* 112 Neb. 479, 199 N.W. 823 (1924): " 'A provision in a contract for the purchase of real estate, to the effect that vendee agrees that he has made personal inspection of the property covered by the contract and is buying it solely on his own investigation and not on any representations made by any one else as to any material matter affecting such property or his purchase thereof, will not relieve the vendor, or his agent, from responsibility for fraudulent representations, made by vendor's agent, concerning the subject-matter of the contract . . . .' " *Wolford v. Freeman,* 150 Neb. 537, 546, 35 N.W.2d 98, 103 (1948). The contention of the seller with reference to the contractual provision is not well founded.

We now turn to the deposition testimony. We summarize or quote the pertinent material portions. Negotiations between the parties took place in early May 1978. The contract was signed on May 26, 1978. The purchasers took possession of the property early in October 1978.

There were two meetings between the parties before the contract was signed. On the first occasion there was an inspection of the house and apparently no conversation relevant to the issue before us. The plaintiff Wolfe Gitschel stated that at the second meeting he, his wife, the defendant, and the real estate agent were present. With respect thereto we quote from his deposition: "Q. Well, was the water system discussed? A. Pardon? Q. Was the water system discussed? A. I asked about plumbing. Q. Do you recall what you asked? A. Well, in the entire discussion I just asked if there was any plumbing problems. Q. Okay. Is that, to the best of your recollection, the way you said it? A. Yes. Q. And what, if anything, was said, and by whom? A. Well, Jan Sauer mentioned the fact that she had just installed a pressure system in the well and that she had put in a new drain field. . . . Q. Was anything else said about the plumbing, for the moment disregarding the sewer? A. No. Q. Now, with respect to the sewer system, which I think you already indicated was discussed, tell me what was said by who and what everybody said about it. A. Well, I asked if there was any problem with the plumbing, meaning the sewer system. And she said, 'No'—Jan. And then she went on to say she put in a new drain field. Q. Was there any further discussion about it? A. No."

Defendant testified that when asked about the plumbing she told the plaintiffs that they had had no problems, that they had put in a new holding tank (referring to the water system) and a new drain field (referring to the septic system). Her husband

had put in the new drain field mostly himself. They had no problems with the plumbing except on two occasions when a farmer cut the pipe. All the plumbing in the house drained properly. There was no discussion about a septic tank.

The plaintiffs testified that beginning a day or two after they took possession, the bathtub took hours to drain and the stool had to be flushed more than once. They used a plunger on the bathtub. They then began to use Drano and other chemicals and finally a sewer auger which they used many times. Plumbing drainage problems just grew worse. The first time they used the auger the system worked all right for a day or two and then began backing up again. Gitschel called the defendant to find out where the septic tank and the drain field were located and she told him the location, but it could not be located. Finally they found the drain field in the pasture. They had plumbers dig it up. It consisted of about 50 feet of perforated pipe placed in gravel or rock. They dug up the sewer line from the drain field to the house. There was no septic tank anywhere along the line. Later they found the septic tank adjacent to the foundation of the house. It had collapsed. It was connected to the house plumbing by a separate line from the drain field line. Gitschel, in response to a question asking him to describe this other line, answered: "A. The other line came out, like I say, from a Y shape from another part of the house. And it went into the septic tank. Q. So I understand you clearly, were there two sewer lines coming out of the house or one line that branched off two directions? A. Like I say, I'm no plumber. But I was told, and like I say, I didn't get down there and look because that thing was complete [sic] filled with sewage, you know. But they said there was a branch line." There was no drain field "going off" from the septic tank. The Gitschels had a new septic

tank put in and connected it to a new drain field. That solved the problem.

Ruff testified: "Q Now, calling your attention to the sewer system, was there a discussion about anything to do with the sewer system? A Yes. Wolfe asked about the sewer system. We were standing in the living room at the time. And I turned to Jan and said, 'Jan, tell us about the sewer system.' And she said there had been partial or some new drain field put in. And I asked her what she meant by a new drain field or part new drain field and then she explained the fact they had been running the raw sewage into a ditch south of them. And I asked her about the septic tank and she said, 'It's south of the house. I don't have any idea where it is.' And that's basically about the only thing that was said. Q. When you said, 'I don't have any idea where it is,' were you quoting her? A. Yes. She said, 'I don't know where it is, but it's south of the house.' . . . Q. Were there any questions asked about whether the sewer system ever over flowed or backed up, or anything? A. Not that I know of. Q. Was there any questions asked about the condition of other pipes and plumbing in the house or outside of the house? A. None that I know of."

The evidence further shows that the defendant had lived in the house for about 8 years. During that time she had no occasion, in her words, to "unplug" the septic tank. As previously indicated, she was unaware of its location. This would tend to indicate that it had not been emptied for about 8 years.

Except as above indicated, there was no evidence with reference to the water system. No reasonable inference can be drawn from the testimony that a false representation was made with reference thereto or that the plaintiffs suffered any damages with reference to that system. The judgment of the District Court, insofar as it pertains to the water system, is affirmed.

We have, however, a different evidentiary situation as it relates to the plumbing or septic system. It seems clear that the defendant has not demonstrated that there is no genuine issue of material fact with reference thereto.

The material elements of a cause of action for fraudulent representation are the following: (1) That a representation was made; (2) That the representation was false; (3) That when the representation was made it was known to be false or made recklessly without knowledge of its truth and as a positive assertion; (4) That it was made with the intention that the plaintiff should rely upon it; (5) That the plaintiff did rely upon it; and (6) That he suffered damage as a result. *Ames Bank v. Hahn,* 205 Neb. 353, 287 N.W.2d 687 (1980).

The evidence shows a representation was made that the seller had had no problems with the plumbing and that in the context of the discussion that term included the septic system. Two issues of disputed material fact are whether an inference may be drawn from the evidence that (1) the representation was false when made, and (2) the defendant knew that it was false or made it recklessly and without knowledge of its truth or falsity.

A considerable amount of time, approximately 4 or 5 months, elapsed from the making of the representation until the plaintiffs took possession of the property. Immediately after taking possession the problems described occurred. If the problem developed after the representations had been made, then the defendant can hardly be charged with knowledge of their falsity. If the problems had manifested themselves previously, then clearly an inference of falsity and knowledge thereof can be drawn.

As previously indicated, the collapsed septic tank had never been emptied or "unplugged," as defendant put it. The Sauers had lived in the house since

at least 1970. Until January 1978, when the drainage field was put in, the sewer pipe had emptied into an open ditch. This fact, plus defendant's knowledge that the septic tank had not been opened for at least 8 years, would permit the inference that she knew that they were not functioning. The evidence that the septic tank had not been functioning is evidenced by the testimony that it was not connected to a drain field. This evidence and the undisputed fact that the alleged new drain field had no septic tank in front of it and that before its construction the sewer contents were being emptied into an open ditch would permit the finder of fact to conclude that there was no effective functioning septic system and the defendant either knew it or made the statement recklessly without knowledge of its truth or falsity. One need not be an engineering genius to know that a drain field of the type here described without a septic tank to catch the solid material would quickly clog. The construction of a new drain field in January 1978 and the sale of the property in May would tend to lead to the conclusion that the drain field was a temporary expedient to facilitate the sale.

The judgment is reversed and the cause remanded for trial on the merits on the issue of false representation and damage with reference to the septic system.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR A NEW TRIAL.