CRAIG CHRISTOPHER ET AL., APPELLEES, V. THEODORE EVANS ET AL., APPELLANTS.

361 N.W.2d 193

Filed January 11, 1985.   No. 83-663.

Thomas L. Morrissey of Morrissey & Morrissey, for appellants.

Michael L. Munch of Hascall, Jungers & Garvey, for appellees.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

Theodore and Betty Evans appeal the judgment of the district court for Johnson County rescinding a contract for the purchase of a residence by Craig and Kimberly Christopher. The trial court found that Evanses had unintentionally concealed a latent condition of the premises, set aside the real estate contract, and ordered Evanses to return Christophers' downpayment made pursuant to the contract. We reverse and remand with directions.

In 1970 the Evanses purchased a home at 630 North 3d Street in Tecumseh, Nebraska. Between 1970 and 1973 the Evanses had a local masonry contractor, Keith Weber, work on the house's foundation on account of a water problem. Rain from the house's downspouts would collect in a gap adjacent to the foundation and leak into the house through the north basement wall. Part of Weber's work consisted of installing vertical "I-beams" parallel with the basement walls. Three-inch I-beams to support the north basement wall were anchored in the floor and ceiling joists.

Although Weber completed the described work, Evanses periodically placed dirt in the recurring depression next to the foundation. If the fill was not adequately maintained, a gully or trough formed along the north wall of the foundation and collected rainwater. Evanses maintained such fill, sloped away from their house.

Two of the Evanses' children had a bedroom in the basement after 1976. In the winter of 1979 Evanses decided to build a new home and listed the house in question for sale. After nearly 2 years' unsuccessful offering for sale, Evanses listed their house with another realtor, Dan Sullivan, and told Sullivan about the "water problem." Sullivan showed the house to two prospective purchasers, Lee Hartwell and Bob Creighton. Hartwell observed the "supports" along the basement walls and detected a basement odor he attributed to a water problem. Creighton looked at the house in August 1980, saw cracks in the basement walls and the supports along the basement walls, and noticed a musty odor in the basement.

Sullivan told Evanses that "something was going to have to be done to these basement walls" or Evanses would have to

make "one heck of a concession in the selling price." Theodore Evans contacted Weber to "dress up the north wall." In August 1981 Weber proceeded to backplaster the north wall, which had a bow or bulge in it. When Weber finished plastering, the north wall was unpainted and a light color. Other basement walls were painted green. The I-beams remained in place and uncovered.

In early September 1981 the Christophers, along with the wife of Craig Christopher's employer, were shown the house by Sullivan. Craig Christopher testified he saw no cracks or water spots in the plastered area of the basement or on the floors. Sullivan told the Christophers "that they [Evanses] had evidently had problems, but as far as he knew, that they had been repaired and the walls were stable." According to Craig Christopher, the presence of the "reinforcement beams" indicated "there had been a problem in the past," because the I-beams were placed to prevent "bowing" of the walls.

According to Christophers and Evanses, there were several discussions about the continual necessity of hauling dirt as fill along the house's foundation to "prevent possible damage or leakage" in the basement. The last such conversation about fill and the foundation occurred at the office of Evanses' attorney just before Christophers and Evanses signed an installment sale contract regarding the house. The contract called for a purchase price of $49,500, with a downpayment of $9,900.

Craig Christopher never placed any fill along the house's foundation. During late spring of 1982, Christophers encountered severe water problems in the basement, especially along the north wall. Unable to reach an agreement with the Evanses, Christophers filed their petition on September 27, 1982, and moved out of the house on November 9, 1982.

In their petition Christophers alleged that Evanses had attempted to conceal evidence of the house's water leakage by painting and replastering one wall and that the "failure of the [Evanses] to disclose the structional [sic] deficiencies of the premises also are [sic] tantamount to fraud." Christophers' petition concluded with a prayer for rescission of the contract with Evanses and return of payments made under the contract.

Evanses filed a counterclaim seeking judgment against Christophers for amounts due under the contract of sale.

The district court found "the concealment of the condition of the north wall, albeit unintentional, raised a duty on the part of Evans' [sic] and their agents to affirmatively advise prospective purchasers of the latent condition." As a result of its finding, the district court held the Christopher-Evans contract to be rescinded and ordered that Evanses return the downpayment by Christophers.

Evanses contend there was no concealment of the "water problem" in connection with the sale of their house to Christophers.

The law of misrepresentation is well settled in Nebraska. A party who has been induced to enter into a contract by a material misrepresentation has, upon discovery of such misrepresentation, an election of remedies: either to affirm the contract and sue for damages or to disaffirm the contract and be reinstated to the induced party's position which existed before entry into the contract. See, *Gitschel v. Sauer*, 212 Neb. 454, 323 N.W.2d 93 (1982); *Russo v. Williams*, 160 Neb. 564, 71 N.W.2d 131 (1955). Christophers have elected rescission and restitution. Because an action to rescind a contract is equitable in character, we review the record de novo, which means we will reach an independent conclusion without reference to the findings of the trial court. *Russo v. Williams, supra.*

Christophers rely on the rule stated in *Hauck v. Samus*, 212 Neb. 25, 28, 321 N.W.2d 68, 70 (1982):

> Although a vendor of real property is not guilty of fraud for failure to disclose material, latent defects which are unknown to him, where the evidence shows he was aware of circumstances from which a reasonable inference could be drawn that he either knew or should have been aware of the fact that latent, defective conditions existed, he is liable to the purchaser.

The applicable rule is found in *Linton v. Sheldon*, 98 Neb. 834, 839, 154 N.W. 724, 725-26 (1915):

> "If, with the intent to deceive, either party to a contract of sale conceals or suppresses a material fact, which he is in good faith bound to disclose, this is evidence of and equivalent to a false representation, because the concealment or suppression is in effect a representation

that what is disclosed is the whole truth. The gist of the action is fraudulently producing a false impression upon the mind of the other party; and if this result is accomplished, it is unimportant whether the means of accomplishing it are words or acts of the defendant, or his concealment or suppression of material facts not equally within the knowledge or reach of the plaintiff."

See, also, *Wolford v. Freeman*, 150 Neb. 537, 35 N.W.2d 98 (1948).

There is no doubt that in Nebraska

"[a]s between vendor and purchaser, where material facts and information are equally accessible to both, and nothing is said or done which tends to impose on the purchaser or to mislead him, the failure of the vendor to disclose such facts does not amount to actionable fraud; but where such facts are known by the vendor and he knows them to be not within reach of the reasonably diligent attention, observation and judgment of the purchaser, and they are such as would readily mislead the purchaser as to the true conditions of the property, the vendor is bound to disclose such facts."

(Citation omitted.) *Wolford v. Freeman, supra* at 545, 35 N.W.2d at 102-03. See, also, *Dargue v. Chaput*, 166 Neb. 69, 88 N.W.2d 148 (1958). If defects are concealed, they are latent. *Dargue v. Chaput, supra.*

The question raised in the present case is whether Evanses concealed facts they were bound to disclose. Christophers argue that Evanses' plastering the basement wall concealed the true condition behind the wall—the existence of a water problem. On the other hand, Evanses argue that Christophers were at all times aware that there was a water problem involving the basement.

*Conceal* means "To hide, secrete, or withhold from the knowledge of others. To withdraw from observation; to withhold from utterance or declaration; to cover or keep from sight. To hide or withdraw from observation, cover or keep from sight, or prevent discovery of." Black's Law Dictionary 261 (5th ed. 1979).

In *Mitchell v. Locurto*, 79 Cal. App. 2d 507, 514, 179 P.2d

848, 851-52 (1947), the court defined *conceal* as follows:

> The word "conceal" pertains to affirmative action likely to prevent or intended to prevent knowledge of a fact. (Restatement of the Law, Contracts, § 471, p. 891 et seq.; Restatement of the Law, Restitution, § 8, p. 32 et seq.; 8 Words and Phrases, Perm. Ed., 328-341.) It has reference to some advantage to the concealing party or a disadvantage to some interested party from whom the fact is withheld.

Although much attention is directed to plastering a leaky, cracked basement wall, the water problem actually originated outside the house along the foundation. Evanses made no representation regarding the extent of the water problem or damage. The cause of the basement water problem was collection of rain in a depression outside and along the foundation of the house. More serious consequences of the water problem—for example, the bulge or bow in the north basement wall and placement of the I-beams to alleviate the problem—were actually observed by Christophers.

Having seen the effects of the "water problem," Christophers possessed material information about existence of the problem. Existence of the water problem, therefore, was not concealed. Christophers admit Theodore Evans suggested placing fill along the foundation of the house "to prevent possible damage or leakage." " 'Where one is put upon inquiry, he is charged with notice of all of such facts as he would have learned by reasonable inquiry.' " *Nathan v. McKernan*, 170 Neb. 1, 17-18, 101 N.W.2d 756, 767 (1960). Evans' suggestion concerning fill along the foundation and the possibility of damage or leakage can hardly be characterized as a maneuver designed to prevent knowledge or discovery of a water problem. On the contrary, Evans' suggestion informed and alerted Christophers to the fact that the problem persisted even at the day the contract of sale was signed—a fact not only within the reach of the Christophers but actually grasped by them. Moreover, the suggestion by Evans negates intent to deceive, a necessary element for fraud by concealment. Under the circumstances, one who is aware of a potential problem with the subject matter of a contract cannot enter the contract

and later complain when the potential problem becomes a reality. For Christophers, there could be no misrepresentation of a material fact already known to them.

The judgment of the district court is incorrect and is reversed. These proceedings are remanded to the district court with directions to dismiss the petition of the Christophers.

REVERSED AND REMANDED WITH DIRECTIONS.