WILLIAM R. SCHATZ ET AL., APPELLANTS, V. LEONARD A. VIDLAK
ET AL., APPELLEES.

424 N.W.2d 613

Filed June 24, 1988.    No. 86-516.

Vance E. Leininger, of Leininger, Grant, Rogers & Maul, for appellants.

Richard T. Seckman, of Karel & Seckman, for appellees Emil E. Herms and Randy Novak.

No appearance for appellees Vidlak.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and BURKHARD, D.J.

BURKHARD, D.J.

This action was commenced by William R. Schatz and Delores A. Schatz, husband and wife, and Roland E. Schatz for damages arising out of their purchase of a retail liquor business, known as "Southern XV Liquors," located in David City, Nebraska. Defendants Leonard A. Vidlak and Lorraine E. Vidlak were the owners of the liquor business and the real estate on which it was located. Defendant Randy Novak was a real estate broker who had the listing for the liquor business and the real estate, and defendant Emil E. Herms was a salesman affiliated with Novak.

The plaintiffs in their petition allege that on June 2, 1981, a purchase agreement was entered into between the plaintiffs and the Vidlaks wherein the plaintiffs agreed to purchase the land and retail liquor business from the Vidlaks for $135,000, excluding the inventory, which plaintiffs would pay cash for at the time of closing.

The plaintiffs further allege that during the course of the negotiations in May and June of 1981, the defendants, for the purpose of inducing the plaintiffs to purchase said property, repeatedly made numerous representations regarding the condition of the building which housed the business and the financial condition of the business. Plaintiffs in their brief refer to only four of the alleged misrepresentations, to wit: (1) that the plumbing facilities in the building were in good condition; (2) that the septic tank and septic system servicing the building were in good condition; (3) that defendants Vidlak had realized a "net taken in 1980" from the operation of the business in the sum of $42,900; and (4) that a purchaser on terms being offered would be able to pay off the debt being carried back in "three to five" years from the operation of the business and associated property. Plaintiffs allege that the representations were false and were so known by the defendants; or were made by them, or one or more of them, without knowing either the truth or falsity thereof while falsely assuming knowledge thereof. Plaintiffs further allege that they relied on the representations when they entered into the purchase agreement to buy the real estate and the liquor business.

Plaintiffs also claim that after operating the business for

about 1 year, it became apparent that the net profit realized by the Vidlaks had been grossly overstated and misrepresented to the plaintiffs and that it would be impossible for any operator to generate sufficient net profits to yield a reasonable living income and to make the payments required by the purchase agreement. In addition, the plaintiffs claim that in May of 1984, they learned for the first time that the septic system serving the building was virtually inoperable because the Vidlaks, in fixing the system, had broken open a drain field junction to permit sewage from the facilities in the building to drain into an open pit, none of which was disclosed to the plaintiffs or was readily discernible by inspection of the premises. Plaintiffs claim the entire system had to be replaced.

Defendants Vidlak admit in their answer that they were the owners and operators of the Southern XV Liquors business and that they entered into a listing agreement with defendant Novak for the sale of the business. Except for admitting the identity of the parties, the Vidlaks generally deny the balance of the plaintiffs' petition.

Defendants Herms and Novak admit in their answer Herms' affiliation with Novak; those facts that relate "to the business and real estate listing with defendants"; and that the purchase agreement was entered into between William and Delores Schatz, purchasers, and the Vidlaks as sellers. By way of affirmative defense, Herms and Novak allege that Novak is a real estate broker licensed to do business in the State of Nebraska, and Herms is a licensed real estate salesman for the State of Nebraska; that on or about March 11, 1981, they entered into a real estate listing contract with defendant Leonard Vidlak; that during the entire period leading up to the execution of the purchase agreement herein, they acted as agents for defendants Vidlak, and this agency relationship was revealed to the plaintiffs; and that each and every representation made by them was within the scope of the agency relationship and was within the authorization of their principal, defendants Vidlak.

Defendants Herms and Novak filed a motion for summary judgment on August 22, 1985. Hearing was held thereon, and the court sustained the motion on February 18, 1986.

Plaintiffs' motion to set aside the court order of February 18 and to grant the plaintiffs a rehearing and a new trial was filed on February 27, 1986, and was overruled by the court on June 3. The plaintiffs perfected their appeal to this court from the order of June 3, 1986. In their assignments of error, plaintiffs allege that the trial court erred in determining that there were no issues of material fact between the plaintiffs and defendants Herms and Novak; in determining that defendants Herms and Novak were entitled to judgment as a matter of law; and in sustaining the motion for summary judgment of defendants Herms and Novak.

Herms, in his deposition, testified that he obtained certain financial figures on the Southern XV business from Jack Eberly, the accountant for the Vidlaks. Herms prepared a handwritten document (herein called document 1) based on his conversation with Eberly, and the document showed, among other figures for the business, "Gross taken in 1980 = $195,000, net taken in 1980 = $42,900." Herms claims he showed the document to Leonard Vidlak, who stated he never saw the document until after this lawsuit was filed. In fact, Vidlak stated that he never saw any document given to the plaintiffs by Herms before Herms gave it to them. Vidlak did, however, authorize Eberly to give financial information to Herms regarding 1980 business and told Herms that whatever information he (Herms) got from Eberly, Herms could pass on to the prospective purchaser. Herms stated that he sent the document to William Schatz.

Herms also prepared another document (herein called document 2) based on information he stated he obtained from Leonard Vidlak. He wrote down the information and then had it typed up. The document was dated May 12, 1981, and was addressed, "Dear Bill." It includes an itemization of various items involved in the sale, as well as certain other financial figures, including gross 1980 sales of $195,000 and gross profits of $42,900. Herms believes he gave a copy of document 2 to William Schatz on May 12, 1981. Document 1 had been delivered to William Schatz before May 12, 1981.

Delores and William Schatz, in their separate answers to interrogatories propounded by defendants Vidlak, state that

Herms, during the spring of 1981, in their presence, made the representation that defendants Vidlak realized a "net taken in 1980" of $42,900 from the operation of the business. Roland Schatz, in his answers to interrogatories propounded by the Vidlaks, stated that the same representation was made to him by Herms on June 2, 1981, via a long-distance telephone call. The plaintiffs, in response to interrogatories of defendants Novak and Herms, claim that Herms stated orally and represented in written form that the "net taken in 1980" from the business was $42,900.

It seems clear that prior to the signing of the purchase agreement on June 2, 1981, Herms and, apparently, the plaintiffs had in their possession documents 1 and 2, one of which was obviously in error as to whether or not the $42,900 figure was gross profit or net profit. It is also obvious that there is a difference in the terms. "Gross profits" are the excess of price received over the price paid for goods before deductions are made for the cost of operation. *Hill v. City of Richmond*, 181 Va. 744, 26 S.E.2d 48 (1943). In a sense, they are really not profits at all, for they generally refer to the excess in the selling price over the cost price without deducting the expenses of resale and other costs of doing business. "Net profits" are gains made from sales after deducting the value of labor, materials, rents, and all expenses, together with the interest of the capital employed. *Coates v. Lake View Oil & Refining Co.*, 20 Cal. App. 2d 113, 66 P.2d 463 (1937).

A motion for summary judgment shall be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Neb. Rev. Stat. § 25-1332 (Reissue 1985). In reviewing a summary judgment, this court must take the view of the evidence most favorable to the parties against whom the motion is directed and give those parties the benefit of all favorable inferences which may be drawn from the evidence. Summary judgment is an extreme remedy to be awarded only when the issue is clear beyond all doubt. *Cornhusker Agrl. Assn. v. Equitable Gen. Ins. Co.*, 223 Neb. 618, 392 N.W.2d 366 (1986).

From the plaintiffs' point of view, Herms, even up to June 2, 1981, the date the purchase agreement was signed, represented to the plaintiffs that the net profit was $42,900, even though one of the documents he prepared showed such figure to be the gross profit. It is obvious that if the gross profit were $42,900, the net profit would have to be considerably less. The motive and intent of Herms in giving the plaintiffs the net profit figure are questions of fact that must be determined by a court or a jury. Cases in which the underlying issue is one of motive or intent are particularly inappropriate for summary judgment. *Egger v. Phillips*, 669 F.2d 497 (7th Cir. 1982).

Put another way, there is a genuine issue of material fact as to whether or not the statement by Herms that the net profit was $42,900 was in fact a misrepresentation and, if so, whether it was made by Herms with fraudulent intent. Motive, intent, and credibility are issues of fact to be resolved by a judge or jury. A party may be liable when the representation was false when made, and the party knew that it was false or made it recklessly and without knowledge of its truth or falsity. *Gitschel v. Sauer*, 212 Neb. 454, 323 N.W.2d 93 (1982).

Since there is a genuine issue of fact as to the net profit statement, it is not necessary to consider the other alleged misrepresentations referred to in plaintiffs' brief. The judgment of the district court in sustaining the motion for summary judgment of defendants Herms and Novak is reversed, and this matter is remanded to the district court for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.