RICHARD MACKINTOSH AND LYNN MACKINTOSH, APPELLANTS, v. JACK MATTHEWS AND COMPANY, PAT HANSEN, CALIFORNIA FEDERAL SAVINGS AND LOAN ASSOCIATION, DBA CALIFORNIA FEDERAL SAVINGS, NEVADA DIVISION AND PRESTON R. CLARK, RESPONDENTS.

No. 21807

July 8, 1993

855 P.2d 549

*Peter H. Cuttitta,* Reno, for Appellants.

*Jones, Jones, Close & Brown* and *Richard F. Holley,* Reno, for Respondents Jack Matthews and Pat Hansen.

*Clark & Dickey,* Reno, for Respondents California Federal Savings and Loan Association and Preston R. Clark.

## OPINION

By the Court, ROSE, C. J.:

Summary judgment was granted in favor of California Federal Savings and Loan Association, dba California Federal Savings, Nevada Division (California Federal), the seller, its real estate broker, Jack Matthews and Company (Matthews), and their employees, because real property had been sold in an "as is" condition and there had been no affirmative false representation made by California Federal concerning the property. We conclude that there was no material false representation made by California Federal and that appellants Richard and Lynn Mackintosh (the Mackintoshes) had a duty to inquire further about the cause of the water problem once they noticed evidence of water in the basement. Given these facts, the summary judgment entered would have been appropriate were it not for the additional facts that California Federal was also financing the Mackintoshes' home as well as being the seller of it. These facts may establish a special relationship between the buyers and seller that would give rise to a duty of full disclosure by California Federal. Such facts are sufficient to preclude the granting of summary judgment in this case.

### FACTS

California Federal obtained a home in Carson City, Nevada, as a result of a foreclosure. Before listing the property for sale, California Federal employed Waynco, Inc. to clean and paint the

house. Waynco, Inc. hired Mark Kirk (Kirk) to perform the repairs and the clean-up work.

According to Kirk's affidavit, there was water on the floor of the basement when he began work on the property. Kirk met with respondent Preston Clark (Clark), who works for California Federal. They discussed the water problem and agreed that ground water seepage had caused the basement to flood. When Clark asked Kirk how to prevent ground water from seeping into the basement, Kirk explained that they could remove the dirt from around the exterior of the basement and tar seal the exterior of the walls. Kirk further explained that this solution would be temporary and that, because the water table was at a high level, the basement would continue to flood. According to Kirk, Clark originally asked him to install a "french drain,"[1] but later instructed him to forego the installation because a buyer was interested in the property.

Kirk had the electricity in the basement turned off and began work. In his deposition, Kirk stated that after he pumped out the water, he noticed obvious leakage lines on the walls of the basement. His affidavit stated that he also observed what he thought was a crack in the main beam supporting the roof. He concluded that this crack was the result of the settling of the foundation. Kirk further stated that he showed the cracked beam to Clark. When Kirk asked if he should repair the beam, however, Clark instructed him not to bother.

California Federal listed the property for sale "as is" through Matthews. In September of 1986, the Mackintoshes became interested in the property. They contacted Matthews, who put them in touch with its real estate agent, Pat Hansen (Hansen), who showed the Mackintoshes the property.[2]

The Mackintoshes also visited the property on their own. On one of the visits, they entered the basement. Because the electricity was turned off, they used a flashlight or a match to view the area. They noticed a hole in the ceiling. Through the hole, they saw a water pipe which appeared to have been recently repaired. The also noticed "indications of the prior presence of water around the floor of the basement." Kirk's affidavit states that although he met with the Mackintoshes before they purchased the property, Clark had instructed him not to mention the water

---

[1] A french drain consists of an underground passage made by filling a trench with loose stones and covering it with earth. Webster's Third New World Dictionary 908 (3d ed. 1976).

[2] Kirk's affidavit states that he and Hansen looked at the basement together and agreed that the puddles on the floor resulted from ground water seepage.

problems. The Mackintoshes made no inquiries about indications of water in the basement to Hansen, Kirk, or anyone else.

The Mackintoshes agreed to purchase the property "as is" for $122,400.00, using a home loan from California Federal. On October 13, 1986, the property was inspected for wood-destroying pests. The inspector's report mentioned that areas of both the interior and the exterior of the house were damaged from excessive moisture. Specifically, the report stated that "[i]nterior walls in basement area are damaged and sheet rock is moldy from excessive moisture." The Mackintoshes reviewed and signed this report on October 29, 1986. A loan from California Federal to the Mackintoshes was made, and it was evidenced by a promissory note and secured by a trust deed against the property.

Escrow closed on October 31, 1986. According to the Mackintoshes, Kirk was working on their property on this day, and he told them about the water seepage problem. The Mackintoshes maintain that additional structural problems have become apparent to them since buying the house. On October 26, 1989, they filed a complaint against Matthews, Hansen, California Federal, and Clark, alleging misrepresentation and breach of the implied covenant of good faith and fair dealing, and requesting rescission of the contract and damages. The respondents ultimately filed a motion for summary judgment, arguing that the Mackintoshes had notice of the water problem and accepted the property "as is." The district court granted summary judgment to all respondents.

## DISCUSSION

### Standard of Review

Summary judgment is appropriate only when no genuine issues of material fact exist and one party is entitled to judgment as a matter of law. NRCP 56(c); Morrow v. Barger, 103 Nev. 247, 737 P.2d 1153 (1987). In an appeal from summary judgment, all allegations of fact offered by the appellants should be presumed to be true. Charles v. Lemons & Associates, 104 Nev. 388, 390, 760 P.2d 118, 119 (1988).

### False Representation

The Mackintoshes argue that California Federal misrepresented the source of the water problem by leaving a copper water pipe, apparently recently repaired, visible through an open hole in the basement ceiling. The Mackintoshes contend that Califor-

nia Federal's acts constitute implicit misrepresentation, rendering a visual inspection of the basement misleading. California Federal counters that the sales contract specified that the sale was "as is," and that no affirmative acts were taken or statements made to mislead or defraud the Mackintoshes.

Most states do not permit an "as is" clause to shield a seller who has fraudulently misrepresented the condition of property or who has intentionally concealed known defects. *See* Wolford v. Freeman, 35 N.W.2d 98 (Neb. 1948); Frank J. Wozniak, Annotation, *Construction and Effect of Provision in Contract for Sale of Realty by Which Purchaser Agrees to Take Property "As Is" or in Its Existing Condition,* 8 A.L.R.5th 312 (1992). The rationale of these authorities is obvious. A person who makes affirmative false representations to consummate a sale should not be able to shield himself from liability by hiding behind the "as is" contractual language in a sales contract.

California Federal made no express false representations. Leaving the basement with some evidence of water in the proximity of a newly repaired water pipe may have led the Mackintoshes to an incorrect conclusion, but it was not an affirmative statement or act by California Federal; and it cannot be said that California Federal left the basement after the pipe repair in such a condition as to intentionally mislead the buyers. Therefore, absent affirmative material false representations, no action will lie in the Mackintoshes' favor based on false representation.

This conclusion is consistent with Epperson v. Roloff, 102 Nev. 206, 719 P.2d 799 (1986), in which we held that an action for fraud will not arise from nondisclosure in a sale not involving an "as is" clause unless the seller alone has knowledge of material facts that are not available to the buyer. Many other states have adopted similar rules where the seller has "special knowledge" of a defect in the real property being sold, but the buyer is unaware of it and the defect is not readily observable. In Wilhite v. Mays, 232 S.E.2d 141 (Ga.Ct.App. 1976), the seller passively concealed the fact that the septic tank overflowed in the front yard during rainy weather and was not susceptible to repair. The court stated its decision in favor of the buyer as follows:

> Therefore, in cases of passive concealment by the seller of defective realty, we find there to be an exception to the rule of caveat emptor, which exception is applicable to the instant case. That exception places upon the seller a duty to disclose in situations where he or she has special knowledge not apparent to the buyer and is aware that the buyer is acting under a misapprehension as to facts which would be important to the buyer and would probably affect its decision.

*Id.* at 143. The Supreme Court of Georgia affirmed the

result, but stressed that, under the facts of the case, the seller's action amounted to fraud under Georgia law, and therefore the buyer's claims were actionable. Wilhite v. Mays, 235 S.E.2d 533 (Ga. 1977).

*Nondisclosure of Adverse Information by Seller*

Nondisclosure by the seller of adverse information concerning real property generally will not provide the basis for an action by the buyer to rescind or for damages when property is sold "as is." However, a number of courts have modified this "caveat emptor" rule by imposing a duty on the seller to disclose adverse facts when they are accessible only to the seller and could not be discovered by the buyer. In Lingsch v. Savage, 29 Cal.Rptr. 201 (Cal.Ct.App. 1963), the rule was stated as follows when dealing with an "as is" sale:

> [W]here the seller knows of facts materially affecting the value or desirability of the property which are known or accessible only to [the seller] and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer.

*Id.* at 204. Other courts have followed this rule and recognized that an "as is" provision in a contract for the sale of realty does not preclude an action by the buyer for nondisclosure. *See, e.g.,* Rayner v. Wise Realty Co., 504 So.2d 1361 (Fla.Dist.Ct.App. 1987) (holding "as is" clause does not bar a claim for nondisclosure against real estate agency that failed to inform buyer of damage to home from prior termite infestation); Silva v. Stevens, 589 A.2d 852 (Vt. 1991) (finding a seller of a home has a duty to speak based on superior knowledge of material facts and he knows them not to be within reach of the diligent attention, observation, and judgment of the purchaser); Stemple v. Dobson, 400 S.E.2d 561 (W.Va. 1990) ("as is" clause does not relieve vendor of the obligation to disclose a condition that substantially affects the value or habitability of property which was known to the vendor, and unknown to the buyer, and would not be disclosed by reasonable inspection.) We believe these cases state a good rule to apply when dealing with the sale of real property whether the sale is "as is" or not.

The Mackintoshes observed some indications of the presence of water in the basement, and the pest inspection report also referred to dampness at the bottom of the basement walls. With

that information, it cannot be said that the seller was the only one who had information about unusual water accumulation in the basement. Additionally, the Mackintoshes are charged with all knowledge that they actually had, as well as any knowledge that would have been discovered by reasonable inquiry. It is reasonable to assume that information concerning the basement flooding problem would have been disclosed by specific inquiry. Although dealing with real estate sales not containing an "as is" clause, several cases have held that a buyer will be charged with any information reasonable inquiry would disclose once evidence of water damage is observed. *See* Christopher v. Evans, 361 N.W.2d 193 (Neb. 1985) (judgment in favor of buyers based on seller's failure to disclose frequent flooding of basement reversed because buyers possessed information of the water problem); Puget Sound Service v. Darlana Mgt., 752 P.2d 1353 (Wash. Ct.App. 1988) (obvious evidence of water leaks in the interior of the building precluded buyers from asserting viable defense to summary judgment because reasonable inquiry by buyers would have disclosed that the roof leaked whenever it rained). The district court granted summary judgment against the Mackintoshes because they knew or should have known of the water problem, and we believe it would have been an appropriate resolution of the case if it were not for the special relationship that may have existed between the Mackintoshes and California Federal beyond that of a buyer and seller.

### Buyers' and Sellers' Special Relationship

Mancini v. Gorick, 536 N.E.2d 8 (Ohio Ct.App. 1987), illustrates that a special relationship between a buyer and seller can preclude the granting of summary judgment based on the "as is" language in the sales contract. In that case, the Mancinis purchased a house in "as is" condition from Gorick who was not only the seller, but the architect and general contractor of the house. Subsequent to the purchase, the Mancinis discovered that the rafters supporting the roof were of an improper size and not adequately supported. The Mancinis filed suit asserting nondisclosure of this defect, and Gorick filed a motion for summary judgment contending that he was not liable because the property was sold "as is." The trial court granted the motion for summary judgment, but the appellate court reversed and explained its reasoning as follows:

> Although a claim of nondisclosure will not overcome an "as is" clause, a claim of fraudulent concealment will. *Kaye, supra,* at 383, 8 OBR at 497, 457 N.E.2d at 376. Nondisclosure will become the equivalent of fraudulent con-

cealment when it becomes the duty of a person to speak in order that the party with whom he is dealing may be placed on an equal footing with him. 50 Ohio Jurisprudence 3d (1984) 431, Fraud and deceit, Section 78. The duty to speak does not necessarily depend on the existence of a fiduciary relationship. *Central States Stamping Co. v. Terminal Equipment Co.* (C.A. 6, 1984), 727 F.2d 1405, 1409. "* * * It may arise in any situation where one party imposes confidence in the other because of that person's position, and the other party knows of this confidence. * * *" *Id.* . . .

Because of William Gorik's position as not only seller, but architect/engineer as well, it is a question of fact as to whether the Mancinis' confidence in what Gorick implied was reasonable and sufficient to nullify the effect of the "as is" clause.

*Id.* at 9-10.

We believe that the rationale of *Mancini* is a good one and should be applied in this case. The Mackintoshes were not only purchasing the property from California Federal, but were also financing the purchase with this bank. While this did not create a true fiduciary relationship between the two, there is sufficient evidence to suggest that a special relationship was created between them, and this precludes the granting of summary judgment in California Federal's favor.

[Headnote 6]

A jury may find that a special relationship existed if the jury determines that California Federal's status as the lender as well as the seller would have caused a reasonable person to place more confidence and reliance on California Federal than would be placed on an ordinary seller. In other words, the jury must ascertain whether the Mackintoshes, under the circumstances, could reasonably expect California Federal, as lender and seller, to pay greater attention to its interests than would an ordinary seller who was not also providing long-term financing on the property. A jury could conclude that buyers would not reasonably expect that a commercial lender such as California Federal, who was both selling and financing the property, would provide long-term financing on property that would not likely sustain long-term ownership because of its defective condition. It is commonly known that commercial lenders do not loan money on property with the expectation that unsound construction will cause the owners to default on the loan. Commercial lenders are not in the business of providing long-term financing on real property they

know will most likely result in foreclosure because of defects that will be unacceptable or intolerable to a reasonable borrower.

As a result of the foregoing, the trier of fact will have to determine whether appellants' reliance on California Federal, as both seller and commercial lender, was sufficiently reasonable under the circumstances to overcome both the "as is" provision of the contract of purchase and the obligation to fully investigate the conditions revealed by the evidence of water in the basement and the pest inspection report. Because these are questions of fact, we reverse and remand for proceedings consistent with this opinion. The remaining issues raised by the Mackintoshes need not be addressed.

STEFFEN and SHEARING, JJ., concur.

SPRINGER, J., with whom YOUNG, J., agrees, dissenting:

The majority has announced a novel and understandably unprecedented[1] rule that would expose a "commercial lender" to lawsuits for rescission and damages by buyers who buy repossessed property from the lender on an "as is" basis. Henceforth, when commercial lenders sell and refinance property that they have foreclosed upon, they can no longer safely rely on the customary "as is" disclaimer in their sales contracts. Such lenders must now cope with a convoluted rule of law that subjects them to possible lawsuits whenever they sell property that they have taken back through foreclosure. Now commercial lenders must concern themselves with a new legal doctrine of "special

---

[1]The *Mancini* case is not analogous. California Federal, the "commercial lender" now before us, is certainly not in the same position as the architect/ general contractor in *Mancini*. The *Mancini* case is a bit unfocused, relying first on a "duty to speak" and then on "confidence in the [seller] because of that person's position." Whereas an architect who built and lived in a house may have a "duty to speak" and to reveal defects, certainly a lender selling its foreclosed-upon property has no such duty. Insofar as the "confidence factor" is concerned, the court in the *Mancini* case held that if the buyers had a "reasonable and sufficient" confidence in the architect's "position," that degree of confidence could be relied on to "nullify the effect of the 'as is' clause." I do not quite understand just what level of confidence it is that might become so "reasonable and sufficient [as to] nullify" an "as is" provision, and I would not follow such precedent; nevertheless, if "reasonable and sufficient" confidence may nullify an "as is" provision in a sales contract by an architect/builder, I fail to see how such a rule can be applied to a commercial lender. A seller who designs, builds and lives in a house might possibly be said to give rise to a level of "confidence" in a buyer that would prevent such a seller from taking advantage of an "as is" provision, but a commercial lender selling its foreclosed-upon property does not create the same kind of confidence. The lender, as a rule and as in this case, had no more knowledge of the problem than did the buyer; this is probably the reason why these lenders make these sales "as is."

relationship," said by this court to come into play, sometimes, when commercial lenders sell and refinance property that they own by virtue of a previous foreclosure. When a certain, ill-defined relationship between a commercial lender and a buyer of its foreclosed-upon property is found to exist, the "as is" provision in their sales contract may now be subject to being "nullified," thus "[g]iving rise to a duty of full disclosure" by the "as is" seller.

Because I do not understand the rule of this case, I suspect that there will be others in the future who have the same difficulty. It seems to me that all commercial lenders who seek to sell property that they have foreclosed upon must be greatly concerned about whether in the process of selling and refinancing foreclosed-upon property they might be creating a "special relationship" with their buyers that will prevent them from entering into the customary "as is" arrangement.

Whether the critical, "as is"-nullifying, special relationship exists between seller and buyer appears to be entirely a matter of the subjective attitude of the buyer. The inquiry appears to be whether the buyer actually places a "reasonable and sufficient" reliance upon the "position" of the lender/seller in deciding to buy the property or in deciding to borrow from the seller. If "as is" can be nullified in this way, it seems to me that this traditional form of legal disclaimer has lost all of its meaning insofar as commercial lenders who wish to finance the sale of their foreclosed-upon property are concerned.

With respect to this newly-created problem of trying to distinguish a special-relationship lender from a non special-relationship lender, the Majority tells us that the "jury must ascertain whether the [buyer] could reasonably expect . . . [the] lender and seller[] to pay greater attention to its interests than would an ordinary seller securing financing elsewhere." ("Ladies and Gentlemen of the Jury: You must ascertain whether the Mackintoshes could reasonably expect California Federal to pay greater attention to their interests than would an ordinary seller securing financing elsewhere.") After the jury gives an affirmative answer to this question, apparently it then must "also consider whether this greater reliance was known or foreseeable" to California Federal. ("Ladies and Gentlemen of the Jury: If you find that the Mackintoshes could reasonably expect California Federal to pay greater attention to their interests than would an ordinary seller securing financing elsewhere, then you must also consider whether this greater reliance was known or foreseeable.") In sum, then, I guess that the Majority ruling is thus: If a commercial lender is selling its own, foreclosed-upon property, (1) it must not pay greater attention to its own interests than

would an "ordinary seller"; (2) it must *foresee* whether the purchaser-borrower will give a "greater reliance" on the lender's "position" than it would give to an "ordinary seller"; and (3) if, the "greater reliance" is "reasonable and sufficient," a jury might then vote to "nullify the effect of and 'as is' clause." This seems a bit ponderous to me.

This case just might cause some confusion in the financial world. I dissent because I believe that we should continue to allow commercial lenders to refinance foreclosed-upon property that they have sold under an "as is," sales contract and that such contracts should be enforced by the courts without the lenders' having to worry about being sued by a buyer who claims that the lender had paid "greater attention to [its] own interests than would an ordinary seller securing financing elsewhere." I would affirm the summary judgment.