OPINION
By the Court,
Rose, C. J.:
In this case, we adopt the relaxed pleading requirements that the federal courts utilize under Federal Rule of Civil Procedure 9(b) for cases when facts necessary for the plaintiff to plead a cause of action for fraud with particularity under NRCP 9(b) are peculiarly within the defendant’s knowledge or possession. When a complaint includes a claim of fraud, NRCP 9(b) requires a plaintiff to plead with particularity the fraudulent activity’s time and place, the parties’ identities, and the nature of the fraud. If a plaintiff does not plead fraud with particularity, his complaint is subject to dismissal. However, in certain cases, a plaintiff cannot plead with particularity because the facts of the fraudulent activity are in the defendant’s possession. In those cases, if the plaintiff pleads specific facts giving rise to an inference of fraud, the plaintiff should have an opportunity to conduct discovery and amend his complaint to include the particular facts.
In this case, we conclude that the facts necessary for the appellants to plead with particularity are peculiarly within the respondent’s knowledge, and the appellants have pleaded facts supporting a strong inference of fraud. Accordingly, we reverse the district court’s order and remand this case for further proceedings. The appellants should be given an opportunity to conduct discovery and amend their complaint to conform with NRCP 9(b), after which the respondent may renew its motion to dismiss for failure to plead with particularity.

FACTS

This case arises from extended vehicle service contracts (VSCs) sold nationwide through automobile dealerships to individual automobile purchasers (collectively the consumers), who are the appellants. Under the VSCs, the consumers could make claims for covered repairs. The VSCs were promoted and marketed to the automobile dealerships through the Delta Group and were sold to the consumers as insurance products that were insured by National Warranty Insurance Corporation, Risk Retention Group (NWIG). The Delta Group, the automobile dealers, and others were *1188 members of NWIG. Respondent KPMG LLP provided accounting services to NWIG.
In addition, NWIG obtained reinsurance on the VSCs and used the reinsurers’ names in the advertising materials. However, the reinsurance amounted to excess loss insurance, which would be triggered at a point far above any collectible insurance or available reserves.
On each VSC, the automobile dealers, promoters, and marketers took as much as 85 to 90 percent of the premium as a commission. The remaining amount was allocated as an insurance reserve to pay claims. Some large-volume VSC sellers set up offshore “reinsurance companies” to pay covered claims to take advantage of Internal Revenue Service tax exemptions available to small, offshore insurance companies. KPMG marketed its services to enable the VSC sellers to take advantage of the tax exemption.
When consumers purchased a VSC, the VSC’s cost was financed by their lender and was included with the cost of the automobile in the consumers’ loans. Without such financing, the consumers might not have been able to afford the VSC. For the consumers to obtain financing, NWIG was required to maintain an “A-” or better rating from A.M. Best, an organization that reviews and rates an insurer’s financial condition. Without an “A-” or better rating, a bank financing an automobile purchase would refuse to finance a VSC as part of an automobile purchase.
In early 2003, NWIG and Pacific Fiduciary Investment Corporation entered into a Bordereaux Assignment, Assumption and Trust Agreement (the Bordereaux Agreement), assigning NWIG’s liability to Pacific for VSCs for automobiles with over 80,000 miles. KPMG advised NWIG regarding the Bordereaux Agreement. Without the assignment of the over-80,000-mile-warranty book of business, NWIG would have been insolvent and would have been unable to maintain its “A-” or better rating from A.M. Best. Shortly after the assignment, the Delta Group purchased Pacific’s liability from the Bordereaux Agreement and subsequently repudiated the Bordereaux Agreement, refusing to satisfy claims from VSC purchasers.
As a result of the Delta Group’s repudiation, NWIG was exposed to approximately $100 million in unpaid VSC claims, which, combined with its other liabilities, far exceeded its assets. Soon after, its A.M. Best rating dropped to a “B” rating. With a “B” rating, banks were unwilling to finance VSCs guaranteed by NWIG, which dramatically reduced its VSC business. NWIG’s other business activities were also adversely impacted. Facing liabilities exceeding its assets, NWIG commenced insolvency proceedings in the Grand Cayman Islands in June 2003. Shortly before, in May 2003, NWIG ceased all payments for repairs covered under the VSCs and transferred its reserves out of the United *1189 States. NWIG retained KPMG as its trustee/liquidator in the insolvency proceedings.
The consumers alleged that NWIG and its VSCs were fundamentally flawed in that too much of the premium was paid to the automobile dealers, promoters, and marketers, and not enough money was set aside to adequately pay VSC claims. Instead of recognizing these flaws and NWIG’s undercapitalization, the consumers alleged, the automobile dealers, promoters, and marketers sought to fraudulently maintain NWIG’s “A-” rating with A.M. Best by transferring, through the Bordereaux Agreement, the majority of NWIG’s VSC liability off of NWIG’s balance sheet. As a result, instead of NWIG’s collapse occurring in late 2002, NWIG could continue to market VSCs to other consumers in order to generate revenue to pay pending claims from earlier VSC purchasers. Thus, the consumers alleged that, although NWIG’s failure was anticipated, the automobile dealers, promoters, and marketers engaged in accounting fraud in order to keep their VSC commissions — defrauding the VSC purchasers.
Preparing the Bordereaux Agreement and NWIG’s books and taking advantage of complex Internal Revenue Service tax exemptions all required complex accounting expertise, which was provided by several large accounting firms, including KPMG.

The consumers’ allegations of KPMG’s involvement in fraud

The consumers’ theory of KPMG’s liability rested on KPMG’s alleged complicity in concealing NWIG’s true financial condition from A.M. Best, lending institutions, the IRS, other regulators, and the consumers and “creating the appearance of a well-capitalized insurance company.” According to the consumers, but for KPMG’s fraudulent concealment, NWIG could not have achieved an “A-” rating with A.M. Best.
Allegedly, from “1988 to present and continuing,” KPMG “[e]mployees and representatives,” including, but not limited to, Theo Bullmore, provided to NWIG “accounting, actuarial, staffing, auditing, consulting and ‘trustee’ and/or ‘liquidator’ services.” These services included “preparation of consolidated tax returns” and advice to NWIG on the Bordereaux Agreement, from KPMG’s offices in Nebraska and the Grand Cayman Islands, and also at NWIG’s offices. During KPMG’s performance of these services, it allegedly (1) approved financial statements that failed to report all of NWIG’s liabilities; (2) concealed that NWIG’s actuarial and accounting practices were not based on industry standards; (3) “misrepresented potential losses [and] adequacy of reserves, [reinsurance, surplus, assets, and capitalization;] . . . [(4)] ignored the patently deficient and misrepresentative actuarial analysis” prepared by Milliman USA, Inc.; (5) “provided advice to NWIG on the fraudulent . . . Bordereaux Agreement” without *1190 revealing that the agreement was a “sham transaction” to “perpetuate the continued sale of VSCs”; (6) concealed that the NWIG reinsurance was illusory; and (7) concealed that NWIG had no liability coverage for itself or its officers.
The consumers also alleged that KPMG, as NWIG’s liquidator and trustee in the insolvency proceedings, was protecting the reinsurance companies by (1) not accepting VSC claims, which ensured that the reinsurance was never triggered, and (2) not seeking enforcement of the Bordereaux Agreement.
Finally, the consumers alleged that KPMG promoted NWIG’s VSC business to the automobile dealerships as a means of setting up offshore reinsurance accounts as tax shelters. This allegedly demonstrated KPMG’s complicity in fraudulent concealment because “its active promotion of the VSC warranty business for a fee to Defendant car dealerships and others as a tax shelter[,] whereby the owners of the car dealerships could establish offshore reinsurance companies and/or ‘reserve accounts,”’ enabled the automobile dealerships to siphon off premiums, receive exorbitant commissions, and evade consumer protection laws.

The class action litigation

The consumers initially filed two separate lawsuits against various defendants. The initial lawsuits were consolidated and, in November 2003, the consumers filed a class action consolidated complaint against those involved in the VSC scheme, including auto dealerships, insurance and reinsurance companies, companies that had promoted and brokered the VSCs, and the accounting and actuarial firms, including KPMG. Several of the defendants moved to dismiss the consolidated complaint for, among other things, failure to plead fraud with particularity under NRCP 9(b). The district court denied the motions and granted the consumers leave to amend their complaint. The consumers filed their first amended consolidated complaint, which included causes of action for fraud and unjust enrichment against KPMG.[2]
KPMG moved to dismiss the consumers’ first amended consolidated complaint based on the district court’s lack of personal ju *1191 risdiction over KPMG, the consumers’ failure to plead fraud with particularity under NRCP 9(b), and the consumers’ failure to state a claim for unjust enrichment under NRCP 12(b)(5).[3] After a hearing, the district court entered a summary order granting KPMG’s motion to dismiss. The district court later certified the order as final under NRCP 54(b). The consumers timely appealed.

DISCUSSION

On appeal, the consumers argue that the district court has personal jurisdiction over KPMG and that they have pleaded fraudulent concealment with particularity, and the district court erred by granting KPMG’s motion to dismiss. The district court’s order, however, provided no findings of fact or any indication as to why it granted KPMG’s motion. Therefore, we are unable to determine the legal ground or grounds upon which the district court based its order.
One of KPMG’s arguments in its motion to dismiss was the district court’s lack of personal jurisdiction. Because the determination of personal jurisdiction is a fact-intensive inquiry and the district court provided no factual findings,[4] we are unable to determine whether the district court erred when it determined that it did not have personal jurisdiction over KPMG. Accordingly, to the extent that the district court’s order rests upon a lack of personal jurisdiction, we vacate the order and remand this matter to the district court for further consideration and to make findings of fact.[5]
Next, to the extent that the district court’s order was based on the consumers’ failure to plead fraud with particularity, we now address NRCP 9(b)’s pleading requirement.

*1192
NRCP 9(b)’s strict pleading requirements

An order granting a motion to dismiss for failure to state a claim is subject to a rigorous standard of review on appeal.[6] We must regard all factual allegations in the complaint as true and must draw all inferences in favor of the nonmoving party.[7] “A complaint should only be dismissed if it appears beyond a reasonable doubt that the plaintiff could prove no set of facts, which, if true, would entitle him to relief. Dismissal is proper where the allegations are insufficient to establish the elements of a claim for relief.’ ’[8]
Under NRCP 9(b), a plaintiff must plead the circumstances constituting fraud with particularity. Pleading with particularity is required “in order to afford adequate notice to the opposing part[ies],”[9] ‘“so that they can defend against the charge and not just deny that they have done anything wrong.’ ”[10] To plead with particularity, plaintiffs must include in their complaint “averments to the time, the place, the identity of the parties involved, and the nature of the fraud.”[11] “Malice, intent, knowledge and other conditions of the mind of a person may be averred generally.”[12] Nevada’s NRCP 9(b) jurisprudence contains no exceptions to this pleading requirement.
Whether the consumers’ complaint satisfies NRCP 9(b) is a reasonably close question. While the consumers alleged misrepresentation, falsehoods, and the general time frame during which the fraud occurred, the complaint lacks specificity about KPMG’s actions. For example, the consumers’ complaint does not inform KPMG of any specific dates or time frames, or specify where, in NWIG’s financial statements, liabilities were concealed or misleading accounting practices were used.[13] Thus, when defending against the allegations in the complaint, the most KPMG could aver is that it has “ ‘[not] done anything wrong.’ ”[14] Accordingly, the consumers’ complaint does not meet the NRCP 9(b) particularity requirements.
*1193 However, the consumers understandably were not more specific because a great deal of the information in this case was in the hands of KPMG and the other defendants. Therefore, the consumers were unable to make allegations in their complaint with greater specificity in order to comply with the requirements of NRCP 9(b) for fraud complaints. This difficulty places the consumers in a classic catch-22 — they are required to file a complaint to enable them to conduct discovery to ascertain the relevant information they need, but they cannot file a complaint with sufficient particularity because they do not know the information contained in KPMG’s documents. Many courts have addressed similar situations and recognize an exception to the particularized pleading requirements.

Relaxed standards for particularized pleading when information is in the defendant’s possession

Under Federal Rule of Civil Procedure 9(b), which contains language identical to NRCP 9(b), federal courts have recognized an exception to particularized pleading.[15] When the facts necessary for pleading with particularity “are peculiarly within the defendant’s knowledge or are readily obtainable by him,” FRCP 9(b)’s pleading rule is relaxed because the “plaintiff[ ] can not be expected to have personal knowledge of the relevant facts.”[16] In that situation, the plaintiff may make an allegation on information and belief but “must state the factual basis for the belief.”[17] When applying this relaxed standard, the federal courts require the plaintiff to allege more than suspicious circumstances.[18] “Where pleading is permitted on information and belief, a complaint must adduce specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading standard.”[19]
Applying this relaxed standard, the United States District Court for the Southern District of New York, in Dominicus Americana *1194 Bohio v. Gulf & Western,[20] held that the plaintiffs’ complaint alleged facts giving rise to an inference of fraud. In that case, Gulf & Western Industries (G & W) owned and operated a tourist resort in the Dominican Republic. The plaintiffs developed a competing tourist resort in the same area and alleged that G & W fraudulently induced the Dominican government to act against the plaintiffs to disrupt or discourage development and use of the plaintiffs’ resort. The plaintiffs alleged, among other things, that, at G & W’s behest, a commission studied, and the Dominican government endorsed, the creation of a national park that would require the appropriation of plaintiffs’ land. One commission member was a G & W subsidiary’s officer. The Dominican government abandoned the plan upon discovering that it would have required confiscating the plaintiffs’ property. The plaintiffs also alleged that G & W offered to assume the costs of road construction, if the Dominican government relocated a road away from the beachfront and the plaintiffs’ property to an inland route. G & W also allegedly convinced government officials to prohibit charter flights from landing at the local airport if they were carrying passengers staying at the plaintiffs’ resort, while allowing charter flights carrying passengers staying at G & W’s resort to land. Finally, the Dominican Tourist Information Center allegedly gave misleading information about the plaintiffs’ resort to tourists and steered tourists to G & W’s resort.[21]
The federal district court found that the plaintiffs’ allegations did not meet the strict requirement of FRCP 9(b), but it also found that “[wjhere a plaintiff is claiming ... to have been injured as the result of a fraud perpetrated on a third party, the circumstances surrounding the transaction are peculiarly within the defendant’s knowledge.”[22] Therefore, the court applied the relaxed standard and, pointing to the above facts, allowed the plaintiffs to conduct discovery and to amend their complaint to meet FRCP 9(b)’s pleading requirements.[23]
This exception strikes a reasonable balance between NRCP 9(b)’s stringent requirements for pleading fraud and a plaintiff’s inability to allege the full factual basis concerning fraud because information and documents are solely in the defendant’s possession and cannot be secured without formal, legal discovery. Therefore, *1195 we adopt this relaxed standard in situations where the facts necessary for pleading with particularity “are peculiarly within the defendant’s knowledge or are readily obtainable by him.”[24]
In addition to requiring that the plaintiff state facts supporting a strong inference of fraud, we add the additional requirements that the plaintiff must aver that this relaxed standard is appropriate and show in his complaint that he cannot plead with more particularity because the required information is in the defendant’s possession. If the district court finds that the relaxed standard is appropriate, it should allow the plaintiff time to conduct the necessary discovery.[25] Thereafter, the plaintiff can move to amend his complaint to plead allegations of fraud with particularity in compliance with NRCP 9(b).[26] Correspondingly, the defendant may renew its motion to dismiss under NRCP 9(b) if the plaintiff’s amended complaint still does not meet NRCP 9(b)’s particularity requirements.
Returning to the instant case, the consumers have presented facts from which an inference of fraud on KPMG’s part can be drawn. Offshore insurance requires complex accounting. KPMG advised NWIG regarding the Bordereaux Agreement, which transferred a large piece of liability to a company that was an NWIG member, and that later repudiated the agreement. KPMG provided staffing for NWIG when it needed accounting help. KPMG promoted offshore reinsurance companies to enable automobile dealerships to sell the NWIG VSCs and avoid taxes. Finally, NWIG transferred all of its assets outside of the United States when it filed for insolvency proceedings and KPMG is now NWIG’s liquidator/trustee that is refusing to pay any VSC claims.
Therefore, we conclude that the consumers pleaded sufficient facts in their complaint to support a strong inference of fraud. Accordingly, to the extent that the district court’s order was based on noncompliance with NRCP 9(b), we reverse that part of the district court’s order and remand this case to the district court. The district court should allow the consumers an opportunity to conduct discovery with KPMG and, afterwards, an opportunity to amend their complaint to state their allegations with specificity. Once the consumers amend their complaint, KPMG may renew its motion to dismiss for a lack of particularity.

*1196
CONCLUSION

While we agree with the district court that the plaintiffs failed to state their claim of fraud with particularity in every instance under NRCP 9(b), we adopt the relaxed standard of pleading utilized by the federal courts under FRCP 9(b) when the facts necessary for pleading with particularity “are peculiarly within the defendant’s knowledge.”[27] In this case, we conclude that the facts necessary for the consumers to plead with particularity are peculiarly within the defendants’ knowledge, and the consumers have pleaded facts supporting a strong inference of fraud. Therefore, the consumers should be allowed an opportunity to conduct discovery and amend their complaint to conform with NRCP 9(b).
We also conclude that we cannot determine whether the district court erred when it granted KPMG’s motion to dismiss for lack of personal jurisdiction because the district court did not provide any findings of fact.
Accordingly, we vacate in part the district court’s order concerning personal jurisdiction and we reverse in part the district court’s order concerning pleading fraud with particularity. We remand this case to the district court for proceedings consistent with this opinion.
Becker, Maupin, Gibbons, Douglas and Parraguirre, JJ., concur.

 The consumers asserted both in their appellate briefs and during oral argument before this court that they were proceeding against KPMG on theories of fraudulent concealment, accessory liability, aiding and abetting, and concert of action. See generally Dow Chemical Co. v. Mahlum, 114 Nev. 1468, 970 P.2d 98 (1998) (discussing fraudulent concealment, aiding and abetting, and concert of action). However, while the consumers’ first amended consolidated complaint contained general allegations of accessory liability, the only causes of action asserted against KPMG were for fraudulent concealment and unjust enrichment. Accordingly, we do not address aiding and abetting or concert of action.

 Both KPMG LLP and KPMG of Grand Cayman Islands were named defendants. Only KPMG LLP moved to dismiss the first amended consolidated complaint.

 See MGM Grand, Inc. v. District Court, 107 Nev. 65, 67-68, 807 P.2d 201, 202 (1991).

 KPMG also argued in its motion to dismiss that the consumers’ unjust enrichment cause of action failed to state a claim. On appeal, the consumers have neglected to address in their briefs or during argument before this court the matter of whether the district court correctly granted KPMG’s motion to dismiss to the extent that it was based upon the consumers’ failure to state a claim for unjust enrichment. Accordingly, the consumers have waived this issue by failing to raise it, and we will not disturb this portion of the district court’s order. Kahn v. Morse & Mowbray, 121 Nev. 464, 480 n.24, 117 P.3d 227, 238 n.24 (2005); see State, Emp. Sec. Dep’t v. Weber, 100 Nev. 121, 123, 676 P.2d 1318, 1319 (1984); NRAP 28(a).

 Hampe v. Foote, 118 Nev. 405, 408, 47 P.3d 438, 439 (2002).

 Id.

 Id.

 Ivory Ranch v. Quinn River Ranch, 101 Nev. 471, 472-73, 705 P.2d 673, 675 (1985).

 Neubronner v. Milken, 6 F.3d 666, 671 (9th Cir. 1993) (quoting Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985)).

 Brown v. Kellar, 91 Nev. 582, 583-84, 636 P.2d 874, 874 (1981).

 Id. at 584, 636 P2d at 874; NRCP 9(b).

 Our examples here are not a comprehensive list of the deficiencies in the consumers’ complaint.

 Neubronner, 6 F.3d at 671 (quoting Semegen, 780 F.2d at 731).

 “We have previously recognized that federal decisions involving the Federal Rules of Civil Procedure provide persuasive authority when this court examines its rules.” Nelson v. Heer, 121 Nev. 832, 834, 122 P.3d 1252, 1253 (2005) (citing Executive Mgmt. v. Ticor Title Ins. Co., 118 Nev. 46, 53, 38 P.3d 872, 876 (2002)).

 Neubronner, 6 F.3d at 672.

 Id.

 Id. While Neubronner v. Milken, 6 F.3d 666 (9th Cir. 1993), is a securities case and Hockey v. Medhekar, 30 F. Supp. 2d 1209, 1214-16 (N.D. Cal. 1998), has recognized that the United States Congress mandated that particularized pleading be applied to all securities cases, the relaxed pleading standard is applicable to other forms of fraud. See Creative Waste v. Capitol Environmental Services, 429 F. Supp. 2d 582, 607 (S.D.N.Y. 2006) (fraudulent inducement); Remmes v. International Flavors & Fragrances, No. C04-4061-MWB, 2006 WL 2728959, at *12 (N.D. Iowa Sept. 26, 2006) (fraudulent concealment).

 Wexner v. First Manhattan Co., 902 F.2d 169, 172 (2d Cir. 1990).

 473 F. Supp. 680 (S.D.N.Y. 1979).

 Id. at 684-86, 693.

 Id. at 693.

 Id.

 Neubronner, 6 F.3d at 672.

 Dominicus Americana Bohio, 473 F. Supp. at 693.

 Id.

 Neubronner, 6 F.3d at 672.