An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

# IN THE SUPREME COURT OF THE STATE OF NEVADA

WAYNE DAVENPORT, (RE: 7637
SIERRA PASEO LANE),
Appellant,
vs.
GMAC MORTGAGE, A FOREIGN
CORPORATION,
Respondent.

No. 56697

**FILED**

SEP 2 5 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _R. Malone_
DEPUTY CLERK

## ORDER AFFIRMING IN PART, REVERSING IN PART AND REMANDING

This is an appeal from a district court order, certified as final under NRCP 54(b), dismissing a complaint in a tort action. Eighth Judicial District Court, Clark County; Elissa F. Cadish, Judge.

Under NRCP 8(a), a plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." But under NRCP 9(b), "[i]n all averments of fraud or mistake," a heightened pleading standard requires that "the circumstances constituting fraud . . . shall be stated with particularity." A complaint that fails to satisfy these pleading standards is subject to dismissal for failure to state a claim upon which relief can be granted. NRCP 12(b)(5). Here, we address whether the district court erred in dismissing the claims in appellant Wayne Davenport's second amended complaint against respondent GMAC Mortgage.

According to the second amended complaint, Steven Grimm, acting in concert with Eve Mazzarella and several other individuals and entities, including real estate agents, mortgage brokers, and title and insurance companies (collectively, when possible, the Grimm defendants), used Davenport's credit and identity to purchase a residence located at

SUPREME COURT
OF
NEVADA

(O) 1947A

13-28642

7637 Sierra Paseo Lane in Las Vegas (the Sierra Property) without Davenport's knowledge or consent. The Grimm defendants purchased the Sierra Property by executing two promissory notes and deeds of trust in favor of Silver State Financial. Davenport asserts that the Grimm defendants forged his signature on the loan documents and exaggerated his employment income and assets, thereby misrepresenting his ability to pay the notes. Silver State Financial allegedly failed to verify any of the information that it received, and it subsequently sold the notes and deeds for the Sierra Property to GMAC. Thereafter, the loans went into default, prompting GMAC to foreclose on the property and sell it at auction. According to Davenport, it was not until he saw Grimm and Mazzarella being arrested on the news that he suspected being a victim of fraud.

In his second amended complaint, Davenport asserted the following claims against GMAC: fraud, consumer fraud, constructive fraud, civil conspiracy, civil racketeering, unfair lending practices, negligence, negligence per se, intentional infliction of emotional distress, breach of contract, and breach of the covenant of good faith and fair dealing. GMAC filed a motion to dismiss the second amended complaint, which the district court granted upon determining that the claims therein failed under substantive law or were not stated with the required degree of particularity.[1] The district court granted a motion for NRCP 54(b) certification of the dismissal, and this appeal followed.

---

[1]Davenport also pleaded punitive damages as a claim. The district court dismissed this claim, reasoning that it is a remedy and not a separate cause of action.

On appeal, Davenport asserts that the district court erred in dismissing his claims. GMAC responds that we should adopt the pleading standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which, according to GMAC, Davenport's claims do not satisfy. GMAC further argues that even if we do not adopt the revised federal pleading standard, the district court correctly dismissed Davenport's claims under Nevada's less demanding pleading standard. We conclude that the district court erred in dismissing Davenport's civil conspiracy claim but did not err in dismissing the remaining claims that failed to satisfy Nevada's pleading standard. We do not address whether we should adopt the revised federal pleading standard because the civil conspiracy claim met that standard by satisfying NRCP 9(b) and the remaining claims failed to satisfy Nevada's pleading standard and, thus, did not meet the stricter standard provided in *Twombly* and *Iqbal*. As the parties are familiar with the facts of this case, we do not recount them further except as necessary for our disposition.

*Davenport's claims under Nevada's pleading standard*

An order granting a motion to dismiss for failure to state a claim "'is rigorously reviewed.'" *In re AMERCO Derivative Litig.*, 127 Nev. ___, ___, 252 P.3d 681, 692 (2011) (quoting *Shoen v. SAC Holding Corp.*, 122 Nev. 621, 634-35, 137 P.3d 1171, 1180 (2006)). "[T]his court considers all factual assertions in the complaint to be true and draws all reasonable inferences in favor of the plaintiff." *Id.* We reiterate, however, that "[t]o survive dismissal, a complaint must contain some 'set of facts, which, if true, would entitle [the plaintiff] to relief.'" *Id.* (second alteration in

SUPREME COURT
OF
NEVADA

(O) 1947A

original) (quoting *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228, 181 P.3d 670, 672 (2008)).

Regarding fraud-based claims, NRCP 9(b) provides, in relevant part, that "the circumstances constituting fraud . . . shall be stated with particularity." "The circumstances that must be detailed include averments to the time, the place, the identity of the parties involved, and the nature of the fraud . . . ." *Brown v. Kellar*, 97 Nev. 582, 583-84, 636 P.2d 874, 874 (1981). Davenport's claims for fraud, consumer fraud, constructive fraud, and civil conspiracy must satisfy NRCP 9(b)'s heightened pleading standards.[2] Additionally, Davenport's civil racketeering claim must be stated with particularity. *See Hale v. Burkhardt*, 104 Nev. 632, 637-38, 764 P.2d 866, 869 (1988) (holding that

---

[2]Davenport asserts that the district court should have applied the relaxed pleading standard from *Rocker v. KPMG LLP*, 122 Nev. 1185, 148 P.3d 703 (2006), *abrogated on other grounds by Buzz Stew, LLC*, 124 Nev. at 228 n.6, 181 P.3d at 672 n.6. We disagree. *Rocker* affords a relaxed pleading standard for fraud where the plaintiff alleges "facts supporting a strong inference of fraud[ ] . . . and show[s] in his complaint that he cannot plead with more particularity because the required information is in the defendant's possession." *Id.* at 1195, 148 P.3d at 709. Here, Davenport possessed the allegedly fraudulent documents when he filed his second amended complaint. Thus, unlike *Rocker*, the information required to support Davenport's claims was not solely in the defendants' hands. *Id.* at 1193, 148 P.3d at 708. *See Patterson v. Grimm*, No. 2:10-CV-1292 JCM (RJJ), 2010 WL 4395419, at *4 (D. Nev. Nov. 1, 2010) (declining to apply *Rocker* in a case brought by another straw buyer against the Grimm defendants and other lenders where "plaintiff complains of forgeries of his signature, misrepresentations of his finances, and inconsistencies within documents in his possession"); *see also Weinstein v. Home Am. Mortg. Corp.*, No. 2:10-CV-1552 JCM (RJJ), 2010 WL 5463681, at *3 (D. Nev. Dec. 29, 2010) (*Rocker* is inapplicable where a party "complains of inconsistencies within documents in [its] possession").

claims for civil racketeering must be pleaded with particularity). The more lenient pleading requirements of NRCP 8(a) apply to Davenport's claims for unfair lending practices, negligence, negligence per se, intentional infliction of emotional distress, breach of contract, and breach of the covenant of good faith and fair dealing.

*Fraud and consumer fraud*

In order to state a claim for fraud, a plaintiff must allege:

(1) a false representation made by the defendant;
(2) defendant's knowledge or belief that its representation was false or that defendant has an insufficient basis of information for making the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon the misrepresentation; and (4) damage to the plaintiff as a result of relying on the misrepresentation.

*Barmettler v. Reno Air, Inc.*, 114 Nev. 441, 447, 956 P.2d 1382, 1386 (1998).

The defect with Davenport's fraud claim against GMAC is that Davenport failed to allege that GMAC made any misrepresentations. Instead, he alleged that the Grimm defendants made false representations about him and that GMAC failed to inform him of this fraud. While Davenport's allegations might establish fraud by the Grimm defendants, those parties are not before us. As to GMAC, Davenport's claim for fraud fails to state a claim upon which relief can be granted because it does not meet the essential elements that define a fraud claim.

Davenport's consumer fraud claim was predicated on GMAC's alleged violations of NRS 41.600, NRS 598.0915, and NRS 598.0917. NRS 41.600(2)(e) defines "consumer fraud" as "[a] deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive." Most of the provisions cited in Davenport's second amended complaint apply specifically to the

sale or lease of goods or to retail installment transactions. *See* NRS 598.0915(2), (5), (7), (9), (13), (14), (16); NRS 598.0917(2), (6), (7). Only NRS 598.0915(15) could apply to real estate transactions. That provision provides that "[k]nowingly mak[ing] any . . . false representation in a transaction" is a deceptive trade practice. NRS 598.0915(15). But, as with his fraud claim, Davenport's claim for consumer fraud under NRS 598.0915(15) did not allege that GMAC made any misrepresentations. Thus, it did not state a legally cognizable claim for relief.

Not only did Davenport fail to state legally sufficient claims against GMAC for fraud and consumer fraud, but he did not plead those claims with particularity. Rather than identifying the time, place, and circumstances of GMAC's alleged deceptions, Davenport lumped GMAC together with the other defendants and declared that it defrauded him. These conclusory averments do not satisfy NRCP 9(b). *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (discussing the federal counterpart to NRCP 9(b) and stating that "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" (alterations in original) (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F. Supp. 1437, 1439 (M.D. Fla. 1998))). Accordingly, we conclude that the district court did not err in dismissing Davenport's fraud and consumer fraud claims.

*Constructive fraud*

"Constructive fraud is characterized by a breach of duty arising out of a fiduciary or confidential relationship." *Long v. Towne*, 98 Nev. 11, 13, 639 P.2d 528, 530 (1982). Such relationships can give rise to a duty to disclose, such that nondisclosure amounts to fraud. *Mackintosh*

*v. Jack Matthews & Co.*, 109 Nev. 628, 634-35, 855 P.2d 549, 553 (1993). Generally, "[a]bsent such a relationship, no duty to disclose arises." *Dow Chem. Co. v. Mahlum*, 114 Nev. 1468, 1487, 970 P.2d 98, 111 (1998), *overruled on other grounds by GES, Inc. v. Corbitt*, 117 Nev. 265, 270-71, 21 P.3d 11, 14-15 (2001).

This court has never recognized the existence of a special or fiduciary relationship arising solely from a routine, arm's-length relationship between a borrower and a lender or successor lender. Other courts have held that "[t]he lender-borrower relationship . . . is normally an arms-length transaction involving no special duty to disclose," *Pension Trust Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 954 (9th Cir. 2002), and Davenport does not provide any persuasive reason to depart from this general rule.[3]

Davenport alleged in his second amended complaint that GMAC's failure to inform him of the Grimm defendants' wrongdoing was constructive fraud. He alleged that GMAC owed him a duty to disclose the Grimm defendants' wrongdoing because they "were in a relationship of special confidence with [him]." Although the factual allegations contained in a complaint must be accepted as true, we have never held that this type

---

[3]Although Davenport asserts that under *Mackintosh* a relationship between a borrower and lender gives rise to a duty of disclosure, *Mackintosh* addressed a buyer-seller relationship. 109 Nev. at 635, 855 P.2d at 554. In *Mackintosh*, we reasoned that if a seller acts as more than an ordinary seller, a special relationship between a buyer and seller could preclude summary judgment in favor of the seller on a nondisclosure claim if there is a question of fact as to whether a reasonable person would have placed more reliance on the seller based on the relationship. *Id.* Thus, Davenport's reliance on *Mackintosh* is misplaced.

of conclusory legal allegation must be accepted as true. The complaint contained no factual averments describing any interactions or contact with GMAC, nor did Davenport allege that GMAC had any involvement with the origination of the loans for the Sierra Property. Thus, Davenport failed to state facts indicating that he and GMAC had a fiduciary or special relationship that would impose a duty on GMAC to inform him of the Grimm defendants' wrongdoing.[4] Therefore, the district court did not err in dismissing Davenport's constructive fraud claim.

*Civil conspiracy*

To state an actionable claim for civil conspiracy to defraud, a plaintiff must allege: (1) a conspiracy agreement formed by the defendants to unlawfully harm the plaintiff, (2) an act of fraud in furtherance thereof, and (3) resulting damages to the plaintiff. *Jordan v. State ex rel. Dep't of Motor Vehicles & Pub. Safety*, 121 Nev. 44, 74-75, 110 P.3d 30, 51 (2005),

---

[4]We note that

> even in absence of a fiduciary or confidential relationship and where the parties are dealing at arm's length, an obligation to speak can arise from the existence of material facts peculiarly within the knowledge of the party sought to be charged and not within the fair and reasonable reach of the other party.

*Villalon v. Bowen*, 70 Nev. 456, 467-68, 273 P.2d 409, 414-15 (1954). However, because Davenport never alleged that GMAC was involved in the origination of the loans for the Sierra Property or that he had any interactions with GMAC, no duty to disclose could arise under this theory. *See Dow Chem.*, 114 Nev. at 1487, 970 P.2d at 111 (no duty to disclose arises from a party's superior knowledge where "it was not directly involved in the transaction" that gave rise to the claim).

SUPREME COURT
OF
NEVADA

(O) 1947A

*abrogated on other grounds by Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 228 n.6, 181 P.3d 670, 672 n.6 (2008).

Davenport averred that after the Grimm defendants obtained loans in his name through fraudulent means, they would then "launder the improperly obtained loans by transfers or sales to [GMAC]," and GMAC "would seek to legitimize the loans as good faith Purchasers." Davenport claimed that as a result of this conspiracy, he incurred damages because his credit was destroyed. Considering these factual averments to be true, we conclude that Davenport set forth a claim upon which relief could be granted for civil conspiracy. And, although Davenport was somewhat imprecise about the details of this alleged conspiracy, we conclude that he satisfied NRCP 9(b). Thus, the district court erred in dismissing Davenport's claim for civil conspiracy.[5]

Our conclusion would not be different under the revised federal pleading standard, which requires allegations to "raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and establish a plausible claim for relief that permits "the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Given that the civil conspiracy claim satisfied NRCP 9(b)'s heightened pleading requirement, it states a plausible claim for relief under the revised federal pleading standard.

---

[5]Because the district court erred in dismissing this claim, on remand the district court is to reinstate Davenport's demand for punitive damages, which may be considered if he proves his claim for civil conspiracy.

*Civil racketeering*

Davenport's civil racketeering claim was predicated on GMAC's alleged violation of Nevada's RICO statutes, NRS 207.350 through NRS 207.520. To state a claim for such a violation, a plaintiff must allege, with specificity, that the defendant "engag[ed] in at least two crimes related to racketeering that have the same or similar pattern, intents, results, accomplices, victims or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated incidents." NRS 207.390.

Davenport did not set forth, with any specificity, the circumstances of the alleged racketeering. He did not differentiate between the defendants or state with particularity what racketeering crimes GMAC allegedly committed or when, where, and how such crimes occurred. Rather, he indiscriminately claimed that "[d]efendants engaged in no less than two crimes relating to racketeering" and set forth a laundry list of crimes that GMAC and the other defendants committed. Thus, Davenport failed to state his racketeering claim with sufficient particularity. *See Hale v. Burkhardt*, 104 Nev. 632, 637, 642, 764 P.2d 866, 869, 872 (1988) (explaining that a civil racketeering claim must provide information as to "when, where [and] how" the underlying criminal acts occurred and "state the necessary elements of the predicate crimes"). Consequently, the district court did not err in dismissing Davenport's civil racketeering claim.

*Unfair lending practices*

Davenport's unfair lending practices claim was premised on GMAC's alleged violation of NRS 598D.100. The version of NRS 598D in effect at the time of the origination of the loans for the Sierra Property made it an unfair lending practice to "[k]nowingly or intentionally make a

home loan to a borrower based solely upon the equity of the borrower in the home property and without determining that the borrower has the ability to repay the home loan from other assets." 2003 Nev. Stat., ch. 465, § 7, at 2891.

Davenport's claim for unfair lending practices fails because he did not allege that GMAC was involved with the origination of the loans for the Sierra Property. Thus, Davenport's unfair lending claim is legally insufficient because GMAC did not "make a home loan" to him.[6] *See generally Camacho-Villa v. Great W. Home Loans*, No. 3:10-CV-210-ECR-VPC, 2011 WL 1103681, at *6 (D. Nev. March 23, 2011) (noting that there is no authority for the proposition that a loan servicer "steps into the shoes of the originator," and therefore concluding that an unfair lending claim under NRS Chapter 598D does not lie against loan servicers not involved in the origination of the loan); *Vo v. Am. Brokers Conduit*, No. 3:09-cv-00654-LRH-VPC, 2010 WL 2696407, at *2 (D. Nev. July 2, 2010) ("A loan servicer who did not make the loan at issue cannot be subject to an unfair lending practices claim."). Accordingly, the district court did not err in dismissing Davenport's unfair lending practices claim.

*Negligence and negligence per se*

To state a claim for negligence, a plaintiff must allege four well-known elements: "(1) an existing duty of care, (2) breach, (3) legal

---

[6]Under the Truth in Lending Act, a civil action "which may be brought against a creditor may be maintained against any assignee of such creditor." 15 U.S.C. § 1641(a) (2006). Notably, no comparable language is contained in NRS 598D.100.

causation, and (4) damages." *Turner v. Mandalay Sports Entm't, LLC*, 124 Nev. 213, 217, 180 P.3d 1172, 1175 (2008).

Davenport claimed that GMAC owed him a duty "to provide various financing options," "to disclose relevant information," and "to conduct reasonable evaluations into the merits" of the loans taken out in his name. When, as here, a lender lacks involvement in the loan origination and has a conventional relationship with a borrower, no such duties exist. *See Larson v. Homecomings Fin., LLC*, 680 F. Supp. 2d 1230, 1235 (D. Nev. 2009) (recognizing that a lender in an arm's-length loan transaction generally does not owe a duty of care to a borrower); *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 283 Cal. Rptr. 53, 56 (Ct. App. 1991) (noting that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money"). Therefore, because GMAC does not, as a matter of law, owe Davenport the duties of care that he alleged it breached, he failed to state a claim for negligence.

To state a claim for negligence per se, a plaintiff must allege that (1) he or she belongs to a class of persons that a statute was intended to protect, (2) the defendant violated the relevant statute, (3) the plaintiff's injuries are the type against which the statute was intended to protect, (4) the violation was the legal cause of the plaintiff's injury, and (5) the plaintiff suffered damages. *Anderson v. Baltrusaitis*, 113 Nev. 963, 965, 944 P.2d 797, 799 (1997).[7]

---

[7]We note that because Davenport's negligence and negligence per se claims arise from two different sets of allegations, we consider them
*continued on next page . . .*

Supreme Court
OF
Nevada

(O) 1947A

12

Davenport's negligence per se claim was based upon GMAC's alleged unfair lending practices in violation of NRS 598D.100. Because Davenport failed to state a claim against GMAC for unfair lending, his negligence per se claim against GMAC necessarily failed to state a claim.[8] Consequently, we conclude that the district court did not err in dismissing Davenport's negligence and negligence per se claims.

*Intentional infliction of emotional distress*

To state a claim for intentional infliction of emotional distress, a plaintiff must allege: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90, 91-92 (1981).

Davenport failed to describe what conduct by GMAC he considered extreme and outrageous. Rather, he made the conclusory allegation that "[t]he acts of the Defendants, and each of them, were extreme and outrageous and were designed and calculated, in hole [sic] or in part, to cause [him] emotional distress." Thus, the complaint lacked facts supporting the elements of a claim for intentional infliction of

---

*. . . continued*

separately. *Cf. Munda v. Summerlin Life & Health Ins. Co.*, 127 Nev. ___, ___ n.3, 267 P.3d 771, 773 n.3 (2011); *Cervantes v. Health Plan of Nev., Inc.*, 127 Nev. ___, ___ n.4, 263 P.3d 261, 264 n.4 (2011).

[8]In light of our conclusions with respect to Davenport's negligence and negligence per se claims, we need not consider whether the district court correctly found that these claims are also barred by the economic loss doctrine.

emotional distress. Accordingly, the district court did not err in dismissing Davenport's intentional infliction of emotional distress claim.

*Breaches of contract and of the covenant of good faith and fair dealing*

To state a breach of contract claim, a plaintiff must allege the existence of a valid agreement between the plaintiff and the defendant, a material breach by the defendant, and damages. *See Bernard v. Rockhill Dev. Co.*, 103 Nev. 132, 135, 734 P.2d 1238, 1240 (1987).

In his second amended complaint, Davenport did not identify what contract GMAC allegedly breached. Instead, he stated that he "had one or more contracts with . . . Lender, orally and/or in writing." Davenport did not identify what provisions of these alleged contracts were breached, much less what breaches were attributable to GMAC. He simply asserted that GMAC and the other defendants "breached the contract terms causing damages to [him]." Although a plaintiff's pleadings are liberally construed when considering an NRCP 12(b)(5) motion to dismiss for failure to state a claim, pleadings nonetheless must "give fair notice of the nature and basis of a legally sufficient claim and the relief requested." *Breliant v. Preferred Equities Corp.*, 109 Nev. 842, 846, 858 P.2d 1258, 1260 (1993). As pleaded, Davenport's breach of contract claim wholly failed to give GMAC fair notice as to the nature of his claim.

Next, where a party intentionally violates "the intention and spirit of the contract, that party can incur liability for breach of the implied covenant of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 232, 808 P.2d 919, 922-23 (1991).

Davenport alleged that he had a contract with the defendants and that the defendants "breached the contractual covenant of good faith causing damages to [him]." We conclude that as with the allegations

SUPREME COURT
OF
NEVADA

(O) 1947A

14

supporting Davenport's breach of contract claim, this vague allegation failed to place GMAC on fair notice. Accordingly, the district court did not err in dismissing Davenport's claims for breach of contract and breach of the covenant of good faith and fair dealing.[9]

For the foregoing reasons, we

ORDER the judgment of the district court AFFIRMED IN PART AND REVERSED IN PART AND REMAND this matter to the district court for proceedings consistent with this order.

_____, C.J.
Pickering

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

---

[9]We have considered Davenport's remaining contentions and conclude that they are without merit.

SUPREME COURT
OF
NEVAOA

(O) 1947A

cc:   Hon. Elissa F. Cadish, District Judge
      Robert F. Saint-Aubin, Settlement Judge
      G. Dallas Horton & Associates
      Vannah & Vannah
      Hall Jaffe & Clayton, LLP
      Kolesar & Leatham, Chtd.
      Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A